28 F.3d 112
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Phillip E. HARRISON, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 93-5238.
 United States Court of Appeals, Tenth Circuit.
 June 17, 1994.
 
 Before LOGAN, SETH, and BARRETT, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff Phillip E. Harrison appeals the district court's decision affirming the Secretary's denial of his application for supplemental security income benefits. Utilizing the applicable five-step sequential analysis, see 20 C.F.R. 416.920; see also Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir.1988), the administrative law judge (ALJ) determined, at step five, that plaintiff was ineligible for benefits. The ALJ concluded that appropriate jobs existed in substantial numbers in the region in which plaintiff resides and throughout the national economy that correspond to plaintiff's residual functional capacity (RFC) to perform light and sedentary work. The ALJ's determination denying benefits became the Secretary's final decision when the Appeals Council denied review.
 
 
 3
 On appeal, plaintiff advances three contentions: (1) the ALJ erred in failing to include all of plaintiff's impairments in determining his RFC; (2) his RFC did not precisely coincide with a work-level category, making the ALJ's reliance on the grids improper; and (3) the hypothetical posed to the vocational expert did not include all of plaintiff's limitations.
 
 
 4
 "This court reviews the Secretary's decision to determine only whether [the] findings are supported by substantial evidence and whether the Secretary applied correct legal standards when making [the] decision." Hargis v. Sullivan, 945 F.2d 1482, 1486 (10th Cir.1991). Substantial evidence is such "evidence as a reasonable mind might accept as adequate to support a conclusion." Id. We will not "reweigh the evidence or substitute our judgment for that of the Secretary." Id. However, because we find that the ALJ did not apply the correct legal standard to plaintiff's allegation of neuromuscular and/or neuroskeletal chest pain, we reverse and remand to the Secretary.
 
 
 5
 Plaintiff was born in 1956 and has a high school education. In 1986, he suffered a major heart attack when he was stabbed in the chest and heart. Plaintiff required bypass grafting surgery and now claims disability because of cardiac dysfunction, chest pain, and edema and pain in his left leg. His case has been reviewed and remanded twice by the Appeals Council: once for a determination regarding the side-effects of the medications plaintiff takes, and a second time to afford him an opportunity to testify on that issue.[2] After the second hearing, the ALJ again determined that plaintiff was not disabled, finding, among other things, that plaintiff has the RFC to do light and sedentary work. The ALJ specifically concluded that plaintiff's allegations of disabling drowsiness and other adverse side-effects from his medication were unsubstantiated, and that he "is not suffering from a totally disabling pain syndrome." II R. 16.
 
 
 6
 We first consider plaintiff's allegations of additional impairments affecting his RFC. Plaintiff contends that he is unable to sit, stand, or twist because of chest pain and pain and swelling in his left leg. He asserts that those impairments should have been considered by the ALJ in determining plaintiff's RFC, in applying the grids, and in posing the hypothetical to the vocational expert.[3]
 
 
 7
 Plaintiff's medical records suggest two, if not three, different kinds of chest pain. One type of pain is related to angina pectoris. Plaintiff does not dispute the ALJ's conclusion that his chest pain "is not of cardiac origin." The medical evidence, however, references neuromuscular chest pain and neuroskeletal chest pain, both of which plaintiff contends were ignored by the ALJ.
 
 
 8
 Dr. W.W. Stoever, the medical advisor who testified at plaintiff's first hearing, concluded that, while plaintiff's report of sharp, stabbing, needle-like pain was inconsistent with angina, the pain could be musculoskeletal. II R. 68. Plaintiff was taking Tylenol # 4 for pain, as well as other pain medications at that time. Id. at 62. Noting the sparse record, Dr. Stoever observed that plaintiff apparently continued to have post-surgical chest pain. Id. at 59. He thought the pain could be of three different types, "so it is difficult to tell if and how much any of it is due to his coronary artery disease or his heart, heart attack as such or how much of it is musculoskeletal or some other cause. There's no catheterization report submitted, and no operative report submitted." Id.
 
 
 9
 In February 1988, plaintiff took an exercise stress test. Dr. James Cooper, the administering physician and plaintiff's treating physician at the time, noted that plaintiff "had chest discomfort at rest and throughout the exercise stress test." Id. at 329. While the doctor's impression after the test was that plaintiff had "[n]o significant exercise-induced angina pectoris," he concluded that plaintiff did have neuromuscular chest pain. Id. at 330. Dr. Cooper's records reveal consistent complaints of chest pain. Id. at 246 (Dec. 10, 1986), 240 (Jan. 5, 1988), 239 (Feb. 19, 1988). Plaintiff's record from an October 24, 1989 examination at Morton Health Services reveals complaint of chest pain on exertion but not at rest. Id. at 356. However, a second stress test taken that month elicited no complaints of chest pain. Id. at 358.
 
 
 10
 Dr. Richard Cooper, who examined plaintiff on behalf of the Secretary, described plaintiff's report of constant chest pain in three separate areas which worsen while sitting for prolonged periods, and when twisting, coughing and breathing deeply. Id. at 321. This doctor stated his opinion that plaintiff's pain was "likely a chest wall problem." Id. at 323. He also noted that plaintiff "would not" move his left shoulder except in a very restricted manner "because of pain in [the] left chest." Id. at 322. The doctor did not indicate that plaintiff may have been exaggerating his symptoms.
 
 
 11
 Plaintiff's own testimony was that he can sit about thirty to thirty-five minutes before experiencing chest pain. Id. at 72. The pain was described as sharp, needle pain, id. at 77, and chest irritation, id. at 78. At his second hearing, plaintiff complained that the wires wrapped around his rib cage bother him constantly. Id. at 103 (he has wire sutures and surgical clips in his chest as a result of his heart surgery). He described burning, stinging, tingling pain, id. at 109, for which he was taking Tylenol # 3. Id. at 107.
 
 
 12
 The ALJ concluded that claimant's pain was not of cardiac origin. Id. at 15. This conclusion, however, does not entirely dispose of plaintiff's pain allegations. In fact, the ALJ's conclusion that the pain was not of cardiac origin implies an acknowledgment that pain does indeed exist, but stems from some noncardiac source. This deduction is also consistent with the medical evidence of either neuromuscular or neuroskeletal chest pain. The ALJ relied on the results of the two mentioned stress tests to evaluate plaintiff's exertional impairments. Id. at 13-14. With regard to his nonexertional pain complaint, however, the ALJ relied on a recitation of plaintiff's ability to do vacuuming, light housework, exercise, and walking, id. at 15, the opinion of plaintiff's treating physician that plaintiff was "comfortable at rest and in the performance of ordinary light daily activities," id. at 48, and the fact that plaintiff did not complain of chest pain during his last stress test, id. at 14.
 
 
 13
 Initially we note that "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir.1993). Further, in the face of other medically documented chest pain, including test results obtained by the same doctor, the treating physician's isolated remark as to plaintiff's comfort level is not substantial evidence that plaintiff does not suffer chest pain. Evidence that is overwhelmingly outweighed by contrary evidence cannot constitute substantial evidence. Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir.1988). Neither is plaintiff's failure to complain about chest pain during a stress test substantial evidence that such pain does not exist or that he does not experience pain of a noncardiac origin. "The absence of evidence is not evidence." Thompson, 987 F.2d at 1491.
 
 
 14
 When faced with allegations of pain, the ALJ must follow the evaluation procedures outlined in Luna v. Bowen, 834 F.2d 161 (10th Cir.1987).
 
 
 15
 If a pain-producing impairment is demonstrated by objective medical evidence, the decision maker must consider the relationship between the impairment and the pain alleged. "[T]he impairment or abnormality must be one which 'could reasonably be expected to produce' the alleged pain." At this stage the decision maker takes the subjective allegations of pain as true in determining whether they are reasonably related to the proven impairment. He does not evaluate the claimant's credibility. If the nexus between impairment and pain alleged is insufficient, the claimant cannot receive benefits based upon disabling pain. If an appropriate nexus does exist, the decision maker must then consider all the evidence presented to determine whether the claimant's pain is in fact disabling. This evidence includes the medical data previously presented, any other objective indications of the degree of the pain, and subjective accounts of the severity of the claimant's pain. Only at this point may the decision maker decide whether he believes the claimant's assertions of severe pain.
 
 
 16
 Id. at 163 (citations omitted).
 
 
 17
 As a result of his stab wound and resulting surgery, plaintiff has "[m]ultiple sternal wire sutures and multiple surgical clips superimposing the mid-thorax, mid-upper abdomen and left side of the thorax." II R. 220. There is no medical evidence in the record, however, regarding whether this is a pain-producing impairment or whether there is a nexus between the impairment and claimant's alleged pain. See Luna, 834 F.2d at 163. The ALJ, nonetheless, concluded that plaintiff could perform light and sedentary work without reference to a possible pain impairment. Without this preliminary analysis, the ALJ could not properly evaluate plaintiff's allegation of pain.
 
 
 18
 The ALJ has a duty to develop the record even if a claimant is represented by counsel. Thompson, 987 F.2d at 1492. He is required to "inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." Id. (citations omitted). To properly evaluate plaintiff's allegation of chest pain, the ALJ needed evidence about whether the sutures and wires in plaintiff's chest and other side-effects from his being stabbed and the subsequent heart surgery were pain-producing impairments with a nexus to the pain alleged. The medical evidence fails to address this question. On remand, the ALJ should obtain evidence on these issues. If the ALJ is convinced that an appropriate nexus exists between the condition of plaintiff's chest and his allegations of pain, the ALJ must "then consider all the evidence to determine whether the claimant's pain is in fact disabling." Luna, 834 F.2d at 163.
 
 
 19
 Even if plaintiff's chest pain is not disabling in and of itself, his pain in combination with other impairments may render him disabled. Williams, 844 F.2d at 758 (citing Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir.1984)).
 
 
 20
 The Secretary is required to evaluate the combined impact of a claimant's impairments throughout the disability determination process. 42 U.S.C 423(d)(2)(C) (Supp. III 1985); see Anderson v. Heckler, 805 F.2d 801, 805 (8th Cir.1986)(record must show combined conditions received full consideration); Bowen v. Heckler, 748 F.2d 629, 634, 635 n. 1 (11th Cir.1984)(evaluation of combined effect must be more than perfunctory).
 
 
 21
 Williams, 844 F.2d at 756-57 n. 5. Particularly in connection with his determination of plaintiff's RFC category, if the ALJ finds that plaintiff is impaired by chest pain, he must take that nonexertional impairment into account before concluding that plaintiff can do the full range of work in a particular category. If the nonexertional limitation of pain is present, and that pain significantly limits plaintiff's " 'ability to perform the full range of work in a particular RFC' category on a sustained basis," Williams, 844 F.2d at 752 (quoting Teter, 775 F.2d at 1105), the grids cannot be applied conclusively to determine disability. Id.
 
 
 22
 If the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry. Thompson, 987 F.2d at 1490-91. The Secretary must show that "jobs exist in the national economy that the claimant may perform given the level of pain [he] suffers." Id. (quoting Hargis, 945 F.2d at 1490). A vocational expert is ordinarily required to determine what limitation a claimant's chest pain might impose on his ability to do light and sedentary work. Thompson, 987 F.2d at 1491. The questions posed to the vocational expert here failed to take into account any of plaintiff's allegation of chest pain or its potentially limiting effect on his ability to work.
 
 
 23
 Our review of the record convinces us that the Secretary applied incorrect legal analysis in arriving at a conclusion of nondisability. On remand, the ALJ should develop the record more fully with additional medical evidence necessary to evaluate plaintiff's allegation of chest pain. He should then consider whether that pain is disabling either by itself or in combination with plaintiff's other impairments.
 
 
 24
 We note that the ALJ's conclusion that plaintiff is not disabled because of edema and swelling in his left leg is supported by substantial evidence. There is no medical evidence of edema in the record other than "occasional left leg swelling," reported in December 1987. Plaintiff's own testimony was that the leg "don't swell real bad." II R. 108. The inconsistency between plaintiff's allegation of severe and constant pain and the medical evidence constitutes substantial evidence to support the ALJ's decision. Cf. Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir.1992)(finding of no substantial evidence will be justified only where there are no other credible choices or no medical evidence to the contrary).
 
 
 25
 This case is REVERSED and REMANDED to the Secretary for further proceedings consistent herewith.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Each order from the Appeals Council remanding the case vacated the ALJ's earlier order and directed that the ALJ enter a new decision. II R. 20-22, 34-36
 
 
 [3]
 The Secretary does not address the role of plaintiff's alleged impairments in determining his RFC, arguing that the issue was not raised in the district court. Plaintiff, however, did argue that the hypothetical did not include all of his impairments, and that conclusive resort to the grids was therefore improper, given his pain. Conclusive reliance on the grids is inappropriate in the presence of nonexertional limitations that "significantly limit [the] 'ability to perform the full range of work in a particular RFC' category." Williams v. Bowen, 844 F.2d 748, 752 (10th Cir.1988)(quoting Teter v. Heckler, 775 F.2d 1104, 1105 (10th Cir.1985)). We thus view plaintiff's challenge to the ALJ's determination of his RFC without consideration of his nonexertional pain impairments as implicitly raised in his challenge to the ALJ's application of the grids. We therefore consider the issue on appeal