Linda S. THOMPSON, Plaintiff–Appellant,

v.

Louis W. SULLIVAN, M.D., Secretary of Health & Human Services, Defendant–Appellee.

No. 92–7090.

United States Court of Appeals, Tenth Circuit.

March 3, 1993.

Paul F. McTighe, Jr., Tulsa, OK, for plaintiff-appellant.

John W. Raley, Jr., U.S. Atty., E.D. of Oklahoma, Gayla Fuller, Chief Counsel, Region VI, and Rodney A. Johnson, Asst. Regional Counsel, Office of the Gen. Counsel, U.S. Dept. of H.H.S., Dallas, TX, for defendant-appellee.

Before ANDERSON and EBEL, Circuit Judges, and BRIMMER,* District Judge.

---

\* Honorable Clarence A. Brimmer, District Judge, United States District Court for the District of Wyoming, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously

EBEL, Circuit Judge.

Claimant Linda S. Thompson alleges a disability due to back problems and pain. She applied for disability benefits and supplemental security income benefits on January 20, 1990, alleging a disability beginning on December 12, 1989. Her application was denied initially by the Social Security Administration and on review before both an administrative law judge (ALJ) and the Appeals Council of the Social Security Administration. Ms. Thompson then sought review in federal district court, where the administrative actions were upheld by the district judge based on a magistrate judge's recommendation. Ms. Thompson appeals from the district court's adverse ruling. We exercise jurisdiction under 42 U.S.C. § 405(g) and reverse and remand for further proceedings.[1]

Ms. Thompson was forty-two years old at the time of her application, with a history of back problems going back to 1981 or 1982. She has an eighth grade education and work experience in such jobs as patient care and wood hauling. Her benefits hearing before the ALJ lasted only ten minutes. She was represented by an attorney, who interviewed her. (Ms. Thompson is represented by a different attorney on appeal.) The ALJ did not ask any questions. There were no other witnesses. Ms. Thompson's medical records from three treating physicians were on file. The ALJ made his decision on the record before him at the time of the benefits hearing. He did not order a consultative examination or call a vocational expert to evaluate the impact of Ms. Thompson's impairments on her ability to work.

At the hearing, Ms. Thompson's attorney asked her somewhat superficial questions about the nature of her back problem and pain, her medical treatment and medication, and the impact of her pain on her daily activities. *See generally* Transcript, R. Vol. I, 21–29. He elicited testimony from

that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

her that her most recent treating physician, Dr. Nardone, suspected facet syndrome as the proper diagnosis of her back problem. *Id.* at 24. She said that Dr. Nardone gave her prescription medication, which she took for awhile but did not continue because she could not afford it. *Id.* at 24–25. She said she takes several Ibuprofen per day for pain, even though it is ineffective. *Id.* at 25. She said she stopped seeing Dr. Nardone because she cannot afford treatment. *Id.* at 22. She said she is unable to drive, do housework or shopping, or stand, walk, or sit for any length of time because of back and leg pain. *Id.* at 25–28. She said she could not sit for even two hours out of an eight-hour day. *Id.* at 27.

As previously mentioned, the ALJ asked no questions. In general, the questions and answers were superficial and cursory. It appears that Ms. Thompson's attorney cut off a couple of her answers. *Id.* at 22–23. There was no testimony explaining, nor does it appear in the medical evidence, what facet syndrome is. *See id.* at 21–29, 102–10. In addition, Ms. Thompson's attorney did not ask her what precipitated her claim for benefits in 1989, what effect her back problem by itself had on her daily activities, whether the prescription medication she had taken but could not afford to continue was effective against her pain, whether the prescription medication allowed her to work, whether that medication had any adverse side effects, or what other measures, if any, she took to combat her pain. *Id.* at 21–29.

After the hearing, the ALJ determined that Ms. Thompson's allegations of disabling pain were not credible but that she suffered some pain. The ALJ also found, without any evidence, that even though Ms. Thompson had established that she was unable to return to her past relevant work, all of which required at least medium exertion, she retained the residual functional capacity (RFC) to do sedentary work. The ALJ then found, without vocational testimony and disregarding Ms. Thompson's back problems and pain, that Ms. Thompson could do the full range of sedentary work. Finally, the ALJ found, disregarding his finding that Ms. Thompson suffered

pain, that based on her RFC category, age, work experience, and education, she was not disabled under the "grids," that is, the medical-vocational guidelines, 20 C.F.R., Pt. 404, Subpt. P, App. 2, Rule 201.24. Decision of Administrative Law Judge, R. Vol. I at 10–11.

Ms. Thompson asserts four points of error: (1) the ALJ failed in his duty to develop the record because the ten-minute hearing was too brief and because the ALJ did not ask Ms. Thompson any questions about her back problems and pain; (2) the ALJ should have ordered a consultative examination and called a vocational expert; (3) the ALJ improperly relied on the grids for the ultimate conclusion of nondisability because Ms. Thompson's pain, a nonexertional impairment, precluded conclusive reliance on the grids; and (4) the ALJ's finding that the Secretary carried his burden on step five to show that Ms. Thompson retains the RFC to perform the full range of sedentary work and most sedentary jobs, is not supported by substantial evidence. We agree.

I

To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The Secretary has established a five-part sequential evaluation process for determining disability. *See* 20 C.F.R. §§ 404.1520(a)–(f), 416.-920; *Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir.1988) (discussing the five steps in detail). If at any step in the process the Secretary determines that the claimant is disabled or is not disabled, the evaluation ends. *Gossett v. Bowen,* 862 F.2d 802, 805 (10th Cir.1988) (citing *Reyes v. Bowen,* 845 F.2d 242, 243 (10th Cir.1988); *Talbot v. Heckler,* 814 F.2d 1456, 1460 (10th Cir.1987); 20 C.F.R. § 416.920).

The first four steps are not at issue here—the ALJ determined that Ms. Thompson's claim was still under evaluation after

step four of the five-part sequential evaluation process. That is, Ms. Thompson established that she was not currently engaged in substantial gainful activity, *see* 20 C.F.R. § 404.1520(b) (step 1), that she has a severe impairment, *i.e.*, back trouble, *see id.* § 404.1520(c) (step 2), and that she cannot return to her past relevant work, *see id.* § 404.1520(e) (step 4), even though she is not conclusively disabled by the nature of her impairment, *see id.* § 404.1520(d) (step 3). The ALJ therefore proceeded to step five of the five-part sequential evaluation process.

■■■ The ALJ denied benefits at step five. On step five, after the claimant has established at step four that he or she cannot return to his or her past relevant work, the burden shifts to the Secretary to show that the claimant retains the residual functional capacity (RFC) to do other work that exists in the national economy. *See Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir.1991) (citing *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir.1984)); *see also* 42 U.S.C. § 423(d)(2)(A). "The Secretary meets this burden if the decision is supported by substantial evidence," *Gossett*, 862 F.2d at 804 (citing *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir.1987)), and, therefore, the ALJ's decision is reviewed for substantial evidence. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir.1991). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938))). The appeals court neither reweighs the evidence nor substitutes its judgment for that of the agency. *Hargis*, 945 F.2d at 1486; *Casias*, 933 F.2d at 800 (citing *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir.1987)). On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence. *Casias*, 933 F.2d at 801.

## II

How the ALJ should proceed on step five to make the ultimate determination that the claimant is disabled or not depends on whether the claimant alleges an exertional impairment (strength-related), or a nonexertional impairment (pain or mental problems), or both. Ms. Thompson established an exertional impairment, her back trouble, and alleges a nonexertional impairment, pain.

The grids contain tables of rules which direct a determination of disabled or not disabled on the basis of a claimant's RFC category, age, education, and work experience. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. "Under the Secretary's own regulations, however, 'the grids may not be applied conclusively in a given case unless claimant's characteristics precisely match the criteria of a particular rule.'" *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir.1987) (quoting *Teter v. Heckler*, 775 F.2d 1104, 1105 (10th Cir.1985) (other citations omitted)). A mismatch may occur because of a particular exertional or nonexertional impairment, or a particular combination of impairments. *See generally* Soc.Sec.Rul. 83–12.

RFC, "residual functional capacity," is defined by the regulations as what the claimant can still do despite his or her limitations. *Davidson v. Secretary of Health & Human Servs.*, 912 F.2d 1246, 1253 (10th Cir.1990) (citing 20 C.F.R. § 404.1545(a)). The Secretary has established RFC categories of sedentary, light, medium, heavy, and very heavy, based on the physical demands of the various kinds of work in the national economy. *See* 20 C.F.R. § 404.1567. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id.* § 404.1567(c).

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.... [A] job is in this category when it requires a good deal of walking or standing, or when it involves

sitting most of the time with some pushing and pulling of arm or leg controls. *Id.* § 404.1567(b).

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.

*Id.* § 404.1567(a). "[S]itting should generally total approximately 6 hours of an 8–hour workday." Soc.Sec.Rul. 83–10.

"The grids should not be applied conclusively in a particular case ... unless the claimant could perform the full range of work required of that [RFC] category on a daily basis and unless the claimant possesses the physical capacities to perform most of the jobs in that range." *Hargis,* 945 F.2d at 1490 (citing *Channel,* 747 F.2d at 580); *accord Campbell,* 822 F.2d at 1523 (Secretary must show claimant can perform substantial majority of jobs in RFC category, citing *Talbot,* 814 F.2d at 1462 n. 3). "Moreover, resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain and mental impairments." *Hargis,* 945 F.2d at 1490 (citing *Channel* at 580–81). In that case, "[t]he grids may serve only as a framework to determine whether sufficient jobs remain within a claimant's range of residual functional capacity." *Id.* (citing *Huston v. Bowen,* 838 F.2d 1125, 1131 (10th Cir. 1988)). The mere presence of a nonexertional impairment does not preclude reliance on the grids. *Ray v. Bowen,* 865 F.2d 222, 225 (10th Cir.1989) (citing *Gossett,* 862 F.2d at 807–08; *Channel,* 747 F.2d at 582 n. 6); *see also Talley v. Sullivan,* 908 F.2d 585, 588 (10th Cir.1990). The pain must interfere with the ability to work. *See Ray,* 865 F.2d at 225 (claimant alleged pain but not that it prevented her from sitting for extended period of time or from doing seated work); *Gossett,* 862 F.2d at 807 (doctors' evidence showed claimant had no significant nonexertional limitation).

■ In summary, an ALJ may not rely conclusively on the grids unless he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level. Each of these findings must be supported by substantial evidence. In this case, the ALJ erred in all three.

### (1) NONEXERTIONAL IMPAIRMENT, PAIN

■ Ms. Thompson established an exertional impairment, back trouble, on step two, and alleges a nonexertional impairment, pain, which must be evaluated on step five. She asserts that the ALJ failed to adequately consider her subjective complaints of pain.

■ A claimant's subjective allegation of pain is not sufficient in itself to establish disability. *Gatson v. Bowen,* 838 F.2d 442, 447 (10th Cir.1988). Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment, *Luna v. Bowen,* 834 F.2d 161, 163 (10th Cir.1987) (citing *Frey,* 816 F.2d at 515; *Nieto v. Heckler,* 750 F.2d 59 (10th Cir.1984)), that could reasonably be expected to produce the alleged disabling pain. *Luna,* 834 F.2d at 163; 42 U.S.C. § 423(d)(5)(A). This court has stated:

> The framework for the proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen,* 834 F.2d 161 (10th Cir.1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Musgrave v. Sullivan,* 966 F.2d 1371, 1375–76 (10th Cir.1992) (citing *Luna,* 834 F.2d at 163–64).

■ "Objective" evidence is any evidence, whether physiological or psychologi-

cal, that can be discovered and substantiated by external testing. *Luna,* 834 F.2d at 162. "Subjective" evidence, on the other hand, consists of statements by a claimant or other witnesses that can be evaluated only on the basis of credibility. *Id.* at 162 n. 2.

The claimant is not required to produce medical evidence proving the pain is inevitable. *Frey,* 816 F.2d at 515. A claimant must establish only a loose nexus between the impairment and the pain alleged. *Luna,* 834 F.2d at 164. " '[I]f an impairment is reasonably expected to produce *some* pain, allegations of *disabling* pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence.' " *Huston,* 838 F.2d at 1129 (quoting *Luna,* 834 F.2d at 164).

Ms. Thompson met the first two prongs of this three-part inquiry. The Secretary does not argue otherwise. On October 26, 1989, Dr. Chandler made a diagnosis of lumbar strain and possible herniated disc. R. Vol. I at 107. His examination on that date revealed that Ms. Thompson experienced pain doing straight leg lifts, which increased when he flexed either of her feet. *Id.* On both November 28 and December 12, 1989, Dr. Nardone reported that Ms. Thompson's range of motion was restricted and that "[p]alpation reveals deep tenderness at L4–5." *Id.* at 108, 110. On December 22, 1989, Dr. Nardone reported that Ms. Thompson was "tender over the left paravertebral area." *Id.* at 108.

Because objective medical evidence showed that Ms. Thompson had a back problem producing pain, the ALJ was required to consider her assertions of severe pain and to "decide whether he believe[d them]." *Luna,* 834 F.2d at 163; 42 U.S.C. § 423(d)(5)(A). The medical evidence does not state that Ms. Thompson is disabled by pain, R. Vol. I at 107–10, although Dr. Nardone wrote in November 1989 that Ms. Thompson suffered moderately severe pain that got worse with activities, bending, and walking. *Id.* at 108. However, "the absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain, but a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations." *Luna,* 834 F.2d at 165.

When determining the credibility of pain testimony, the ALJ should consider such factors as

"the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence."

*Hargis,* 945 F.2d at 1489 (quoting *Huston,* 838 F.2d at 1132 and n. 7); *accord Luna,* 834 F.2d at 165–66 (citing *Turner v. Heckler,* 754 F.2d 326, 331 (10th Cir.1985)); *Nieto,* 750 F.2d at 62.

The ALJ found Ms. Thompson's allegations of disabling pain were not credible primarily because she was neither pursuing medical treatment nor taking prescription medicine. Decision, R. Vol. I at 9–10. He also relied on the evidence from her application for benefits that she undertook minimal daily activities such as visiting neighbors and doing light housework. *Id.* at 9. (Her testimony at the hearing, however, was that she basically could not do anything.) In addition, the ALJ relied on Ms. Thompson's medical evidence, which indicates that she did not have a herniated disc, and her CT scan and myelogram were normal. *Id.* at 9, 108–10. The ALJ's conclusion was that Ms. Thompson stopped pursuing medical treatment or prescription medicine because her pain lessened. *Id.* at 9. Although he does not state it, the ALJ necessarily rejected Ms. Thompson's explanation that she failed to pursue medical treatment or prescription medicine because she could not afford it. He agreed she had some pain, which would become severe with strenuous physical activity. *Id.*

At this point there are at least three problems, two looking back and one looking forward. First, in making his credibility determination, the ALJ did not consider several of the *Hargis/Huston* factors and, in fact, he could not consider every factor because Ms. Thompson was not asked the necessary questions at the hearing to obtain some of that information. There is not a talismanic requirement that each factor listed in *Hargis* be addressed, but that case sets out generally the kinds of factors that should ordinarily be considered.

Second, before the ALJ may rely on the claimant's failure to pursue treatment or take medication as support for his determination of noncredibility, he or she should consider "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." *Frey,* 816 F.2d at 517 (citing *Weakley v. Heckler,* 795 F.2d 64, 66 (10th Cir.1986) (quoting *Teter,* 775 F.2d at 1107)). The ALJ did not consider these factors, except for the third one. Regarding the others: there is no evidence in the record that the prescription medicine was effective—Dr. Nardone wanted to see Ms. Thompson again to find out if it helped. R. Vol. I at 108. Nobody asked her. *See generally id.* at 21–29. There is also no evidence that Ms. Thompson could work, with or without prescription medication—the doctors simply do not say. *Id.* at 106–10. She said she could not. *Id.* at 25–28. Further, the ALJ did not consider whether Ms. Thompson's stated reason for discontinuing the medication justified her action.

In addition, the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain. *Frey,* 816 F.2d at 516. The "sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity." *Frey,* 816 F.2d at 516–17 (citing *Broadbent v. Harris,* 698 F.2d 407, 413 (10th Cir.1983)).

All that is left as "substantial evidence" for the ALJ's determination of noncredibility is the medical evidence that Ms. Thompson's CT scan and myelogram were normal and she did not have a herniated disc. However, her doctor still believed Ms. Thompson was in pain, changed his diagnosis and scheduled another appointment to see her. R. Vol. I at 108; *cf. Campbell,* 822 F.2d at 1522 (claimant complained of pain but no doctor reported pain and claimant took aspirin only once a week). The ALJ's determination that Ms. Thompson's allegations of disabling pain were not credible is therefore not supported by substantial evidence. Although this court ordinarily defers to the ALJ as trier of fact on credibility, *see, e.g., Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495, 1499 (10th Cir.1992); *Casias,* 933 F.2d at 801, deference is not an absolute rule. *See Frey,* 816 F.2d at 517 (reversing ALJ on credibility).

Third, even if the ALJ's finding of noncredibility were supported by substantial evidence,

[this court's] review does not end ... with [its] determination that the administrative law judge's decision that the claimant does not suffer from disabling pain is supported by substantial evidence. The Secretary must demonstrate that sufficient jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers.*

*Hargis,* 945 F.2d at 1490 (emphasis added). Ms. Thompson said she cannot sit for very long without taking a break to stand or walk. R. Vol. I at 25–28. The Secretary recognizes that if a claimant cannot sit for extended periods of time, then the range of sedentary jobs he or she can perform may be limited, especially in "[u]nskilled types of jobs[, which] are particularly structured so that a person cannot ordinarily sit or stand at will." Soc.Sec.Rul. 83–12. The Secretary recommends that a vocational expert be consulted in such a case. *Id.; see also Hargis,* 945 F.2d at 1491.

Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial

evidence for the ALJ to find that the claimant's pain is insignificant. *See Ray*, 865 F.2d at 225; *Gossett*, 862 F.2d at 807–08. The ALJ in this case, however, ignored completely Ms. Thompson's pain throughout the rest of his analysis. Since Dr. Nardone, Ms. Thompson's treating physician, stated she experienced moderately severe pain that was worse with activities, *see* R. Vol. I at 108, the ALJ could not find Ms. Thompson has no significant nonexertional impairment.

### (2) FULL RANGE OF RFC–LEVEL WORK

■ An ALJ's finding regarding the claimant's noncredibility does not compel a finding of not disabled. Rather, the credibility determination is just a step on the way to the ultimate decision. The ALJ must also determine whether the claimant has an RFC level and can perform the full range of work at his or her RFC level on a daily basis. *Frey*, 816 F.2d at 512–13 (citing *Channel*, 747 F.2d at 579). The ALJ must also determine whether the claimant can perform most of the jobs at his or her RFC level. Then the ALJ must determine whether and how to use the grids.

■ The ALJ determined that Ms. Thompson retained the RFC to do sedentary work. This finding must be supported by substantial evidence. It appears not to be supported by any evidence at all, however. "[A] sedentary job is defined as one which involves sitting, [but] a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a). "[S]itting should generally total approximately 6 hours of an 8–hour workday." Soc.Sec.Rul. 83–10. In making his finding that Ms. Thompson could do the full range of sedentary work, the ALJ relied on the *absence of contraindication* in the medical records. R. Vol. I at 9. The absence of evidence is not evidence. The ALJ's reliance on an omission effectively shifts the burden back to the claimant. It is not her burden, however, to prove she cannot work at any level lower than her past relevant work; it is the Secretary's burden to prove that she can. *See*

*Gatson*, 838 F.2d at 448 (citing *Channel*, 747 F.2d at 579; *Talbot*, 814 F.2d at 1460); *see also Huston*, 838 F.2d at 1132 (ALJ cannot meet Secretary's burden by saying that information is absent).

Granted, Ms. Thompson's medical records are inconclusive; after all, she discontinued treatment while Dr. Nardone was still trying to pin down a diagnosis. The ALJ, however, finding no evidence upon which to make a finding as to RFC, should have exercised his discretionary power to order a consultative examination of Ms. Thompson to determine her capabilities. *Compare Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir.1990) (consulting examination not required where claimant showed no objective evidence of nonexertional impairment sought to be evaluated), *with Baker v. Bowen*, 886 F.2d 289, 291–92 (10th Cir. 1989) (ALJ's reliance on absence of medical evidence erroneous where within his power to obtain it). To the extent the ALJ may have relied on Ms. Thompson's daily activities, "evidence that a claimant engages in limited activities ... does not establish that the claimant can engage in light or sedentary work activity." *Gossett*, 862 F.2d at 807. The ALJ's finding regarding Ms. Thompson's RFC level is not supported by substantial evidence.

### (3) MOST JOBS IN RFC LEVEL

■ The ALJ concluded that Ms. Thompson could perform a significant number of sedentary jobs. R. Vol. I at 10. He gives no basis at all for this conclusion. He made it despite his other findings that Ms. Thompson has back problems and experiences back and leg pain, and without naming one job that Ms. Thompson could perform.

The ALJ should have called a vocational expert to determine what limitation Ms. Thompson's acknowledged back and leg pain might impose on her capacity to do sedentary work. *See Musgrave*, 966 F.2d at 1376; *Hargis*, 945 F.2d at 1491; *Channel*, 747 F.2d at 581.

### USE OF THE GRIDS

■ The ALJ clearly erred in relying conclusively on the grids because the required underlying findings were not supported by substantial evidence. "Where exertional limitations prevent the claimant from doing the full range of work specified in [her] assigned residual functional capacity, or where nonexertional impairments are also present, the grids alone cannot be used to determine the claimant's ability to perform alternative work." *Campbell,* 822 F.2d at 1523 n. 2 (citing *Talbot,* 814 F.2d at 1460). If the claimant has both exertional and nonexertional impairments, the ALJ must use the grids first to determine if the claimant is disabled by reason of the exertional impairment alone. *Frey,* 816 F.2d at 513 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2)).

> If the claimant is not so disabled, the ALJ must then make a second individualized determination using the grids only as "a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations."

*Frey,* 816 F.2d at 513 (citing *Teter v. Heckler,* 775 F.2d at 1105); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2). This is not to say that, on remand, the ALJ might not properly rely on the grids.

### III

■ Ms. Thompson argues that the ALJ failed in his duty to fully develop the record due to the brevity of the hearing. The preceding discussion should make clear that this argument has merit. It matters that Ms. Thompson was not asked enough questions or the right questions at the hearing because her answers were needed by the ALJ as evidence to support his determination of her credibility. It matters that the ALJ did not order a consultative examination or call a vocational expert because the medical evidence in the record is inconclusive and does not provide substantial support for findings of Ms. Thompson's RFC level or how many jobs she can perform despite her impairments.

■ "It is well established that 'a Social Security disability hearing is a nonadversarial proceeding, in which the ALJ has a basic duty of inquiry, "to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." ' " *Casias,* 933 F.2d at 801 (quoting *Dixon v. Heckler,* 811 F.2d 506, 510 (10th Cir.1987)) (citing *Heckler v. Campbell,* 461 U.S. 458, 471 n. 1, 103 S.Ct. 1952, 1959 n. 1, 76 L.Ed.2d 66 (1983) (Brennan, J., concurring)). This duty to develop the record pertains even if the claimant is represented by counsel. *See Musgrave,* 966 F.2d at 1374 (duty heightened when claimant is unrepresented). The length or brevity of a benefits hearing, however, is not dispositive of whether or not the ALJ has met his or her obligation to adequately develop the record. *Id.* "[T]he more important inquiry is whether [sufficient questions were asked] to ascertain (1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities." *Id.* at 1375.

It is difficult to compare this case point for point with other cases that discuss the brevity issue because they do not give many facts. *See Musgrave,* 966 F.2d at 1374–75 (establishing three-part inquiry concerning nature of impairment, medical treatment and medication, and daily activities); *Carrier v. Sullivan,* 944 F.2d 243, 245 (5th Cir.1991) (twenty-six minute hearing adequate where claimant questioned about condition, treatment, medication, and daily routines); *Born v. Secretary of Health & Human Servs.,* 923 F.2d 1168, 1172 (6th Cir.1990) (brevity not dispositive where no discrepancy in objective evidence and claimant failed to indicate what information would have been produced by further questioning); *Cruz v. Sullivan,* 912 F.2d 8, 11–12 (2d Cir.1990) (hearing too short where record showed "host of lost opportunities to explore the facts"). However, a point-for-point examination is not necessary on this record.

For the above reasons, the case is remanded for further proceedings, including

a supplemental hearing, a consultative examination on the question of RFC, and testimony by a vocational expert on the impact of Ms. Thompson's impairments on her ability to work within the RFC (if she is found to have one). No particular result is dictated; this record does not substantially support a finding of disabled any more than it supports a finding of not disabled.

The judgment of the United States District Court for the Eastern District of Oklahoma is REVERSED, and the case is REMANDED to the agency for further proceedings consistent with this opinion.