69 F.3d 549
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Bobby L. YOUNG, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
Defendant-Appellee.
 No. 94-7171.
 United States Court of Appeals, Tenth Circuit.
 Nov. 6, 1995.
 
 Before BALDOCK, HOLLOWAY and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT[1]
 BROBRY, Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Claimant Bobby L. Young appeals from the denial of his application for Social Security disability insurance benefits. Mr. Young applied for benefits in January 1992, claiming he was disabled due to gout, rheumatism, emphysema, and back problems. At the administrative level, the Secretary of Health and Human services determined Mr. Young was not disabled under the Social Security Act, and denied Mr. Young's request for benefits. On April 5, 1993, after a hearing, an administrative law judge denied him benefits, and the appeals council denied his request for review. Mr. Young then filed an action in the district court seeking review of the administrative decision. The district court adopted the proposed findings and recommendation of the magistrate judge and affirmed the Secretary's denial of benefits. We affirm.
 
 
 3
 * We review the Secretary's decision denying benefits to determine whether it is supported by substantial evidence and whether the correct legal standards were applied. Hill v. Sullivan, 924 F.2d 972, 973 (10th Cir.1991). Substantial evidence is adequate relevant evidence that a reasonable mind might accept to support a conclusion. Hargis v. Sullivan, 945 F.2d 1482, 1486 (10th Cir.1991). If supported by substantial evidence, "[t]he findings of the Secretary as to any fact ... shall be conclusive." 42 U.S.C. 405(g).
 
 
 4
 Mr. Young first contends the Secretary's assessment of his residual functional capacity is not supported by substantial evidence because the administrative law judge failed to evaluate properly his chronic obstructive pulmonary disease. We disagree.
 
 
 5
 A court ordered Mr. Young to submit to a physical examination at the People's Clinic on February 27, 1989. The record states "[patient] had no complaints except for gout" at that time. There is nothing in the record to suggest Mr. Young had any difficulty breathing. To the contrary, the examining physician indicated his chest and lungs were "normal." Mr. Young applied for disability benefits on January 13, 1992. Dr. Terrance Grewe examined Mr. Young on February 12, 1992. Mr. Young told Dr. Grewe he had had emphysema for much of his life, he had asthma and pneumonia as a child, he was "always short of breath, always wheezes, has frequent bronchitis," and his breathing had degenerated over the last eight years. He also told Dr. Grewe his breathing difficulties prevented him from walking more than one or two blocks at a time. Dr. Grewe examined Mr. Young's lungs and determined they were "[c]lear to auscultation. No advantageous sounds or wheezes noted at this time." In light of his findings, Dr. Grewe concluded Mr. Young had "Chronic obstructive pulmonary disease, moderate to severe; however, at this time, it is not in any exacerbation."
 
 
 6
 Eight days later, on February 20, 1992, Mr. Young told a doctor at Morton Comprehensive Health Services he had had emphysema for six years and it had gotten worse during the last two years. The doctor diagnosed Mr. Young as having "# 1 COPD--discussed d/c tobacco [and] # 2 bronchitis," and prescribed an Albuterol inhaler. Mr. Young had a chest x-ray on February 25, 1992. It showed Mr. Young's "lungs are clear" and, according to the examining physician, Mr. Young had "mild" chronic obstructive pulmonary disease. On March 23, 1992, Mr. Young submitted to certain respiratory tests at the St. John Medical Center Pulmonary Laboratory. His forced expiratory volume values were 1.75 to 1.83 liters per second prior to bronchodilators and 1.84 to 1.96 liters per second after bronchodilators. His maximum ventilatory volume values were 47 liters per minute before bronchodilators and 52 liters per minute after bronchodilators. The supervising technician noted Mr. Young showed no signs of wheezing. These results were fed into a computer, and the computer interpretation stated Mr. Young had a "severe obstructive lung defect" and "more detailed pulmonary function testing may be useful if clinically indicated." Dr. J.D. Mayfield later confirmed the computer's interpretation of the results by signing the printout. Mr. Young visited Morton Comprehensive Health Services several times between July and October 1992 to obtain refills for his Albuterol inhaler. The notes for his September 23, 1992, visit state "Presumed COPD, STOP SMOKING!!!"
 
 
 7
 During the hearing before the administrative law judge on February 8, 1993, Mr. Young testified he believed he was disabled in part because of his "breathing capacity." He explained "it just takes me two or three hours every morning to get where I can breath when I get up," "[f]ar as walking it's just about out of the question," and "I know if I walk anything over two blocks I'm exhausted." However, when the administrative law judge asked Mr. Young what his daily activities were, Mr. Young responded "if I feel like it I'll walk downtown just to get away from that [Salvation Army] Day Center. Then back to Salvation Army at 5:00 for supper and go to bed, check in and have supper and go to bed." Mr. Young testified it took him about fifteen or twenty minutes to walk the four or five blocks from the Salvation Army Day Center to downtown Tulsa, and when he got downtown he sometimes went to the library or would just "set on the outside benches out there and visit with some people on the street." Mr. Young also testified during an eight-hour day he could walk "probably an hour, hour and a half." Finally, Mr. Young testified during an eight-hour day he could stand for four hours if he could take breaks every two hours. He also said he could sit "a couple three hours" at a time up to a maximum of five hours per day.
 
 
 8
 After reviewing all the evidence, the administrative law judge found Mr. Young's testimony, "including that regarding pain and shortness of breath, is not credible to the extent that it would prevent [him] from performing light work activity." He also found "with exacerbation of his condition, [Mr. Young's] chronic obstructive pulmonary disease can be moderate to severe in degree," but he did not have any "significant breathing problems or environmental problems with staying at the Salvation Army during the day and night, and walking to the downtown area." The administrative law judge also highlighted Mr. Young's own testimony about his ability to walk, sit and stand for extended periods during an eight-hour work day. In light of this and other evidence, the administrative law judge found Mr. Young retained the residual functional capacity to perform light work, including his past relevant work as a used car salesman, and he was therefore not entitled to disability benefits.
 
 
 9
 In light of this evidence, especially Mr. Young's own admission he was able to walk and stand for significant periods of time despite his asserted breathing difficulties, we conclude the record was sufficiently developed and there is more than enough evidence in the record to support the administrative law judge's conclusion.
 
 
 10
 Mr. Young also contends the Secretary's assessment of his residual functional capacity is not supported by substantial evidence because the administrative law judge failed to properly evaluate his attacks of gout and because the administrative law judge should have called a vocational expert to testify regarding whether he could perform his past work. We see no merit to these contentions. The administrative law judge considered the frequency of Mr. Young's gout attacks, the fact they resolve with treatment, his credibility, his testimony regarding his ability to sit, stand and walk, and his description of the sitting, standing and walking requirements of his past work. The administrative law judge's finding that Mr. Young's gout did not prevent his performance of his past work is supported by substantial evidence, and we cannot disturb it. 42 U.S.C. 405(g). There was no need to call a vocational expert. Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir.1994).
 
 
 11
 For the reasons stated, the judgment of the district court is AFFIRMED.
 
 HOLLOWAY, Circuit Judge, dissenting:
 
 12
 I respectfully dissent. While I would not reverse the ALJ and remand for the award of benefits, I would remand for further proceedings with directions that the ALJ have Mr. Young examined by a pulmonary specialist, and that the specialist's evaluation be considered with other evidence to make new findings. This course I would follow before closing this case because of the disturbing and inconclusive record on Mr. Young's serious pulmonary disease which has not been evaluated by a proper specialist.
 
 
 13
 I am mindful that the Secretary's findings should not be disturbed if they are supported by substantial evidence and if correct legal standards were applied. My disagreement with the ALJ's decision here stems from his failure, in my judgment, to fulfill his "basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." Henrie v. U.S. Department of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir.1993). "The ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.' " Washington v. Shalala, 37 F.2d 1437, 1442 (10th Cir.1994)(quoting Social Security Ruling 82-62). The record before us does not adequately address the effect of Young's established chronic obstructive pulmonary disease on his residual functional capacity to work.
 
 
 14
 In March 1992 Mr. Young underwent pulmonary function studies. The technician administering the tests described Mr. Young's cooperation as a "good effort." II R. at 157. The computerized interpretation, which was signed by a Dr. Mayfield, stated that there was "a severe obstructive lung defect" and that airway obstruction "is confirmed by the decrease in flow rate at peak flow, and flow at 50% and 75% of the flow volume curve. On the basis of this study, more detailed pulmonary function testing may be useful if clinically indicated." II R. at 158. The test results showed Mr. Young close to being per se disabled under the Listing of Impairments for chronic pulmonary insufficiency, 20 C.F.R. Pt. 404, Subpt. P, App. 1, 3.02A.[2]
 
 
 15
 In light of the disturbing state of the record, which shows no pulmonary specialist's evaluation, I feel the medical evidence "is inconclusive and does not provide substantial support for findings of [the claimant's] RFC level or how many jobs [he] can perform despite [his] impairments." Thompson v. Sullivan, 987 F.2d 1482, 1492 (10th Cir.1993). Likewise, on the basis of the compelling reasoning in Thompson, I would remand for further proceedings. Id. at 1492-93.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. Pursuant to Fed. R.App. P. 43(c), Shirley S. Chater, Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. Although we have substituted the Commissioner for the Secretary in the caption, in the text we continue to refer to the Secretary because she was the appropriate party at the time of the underlying decision.
 
 
 [2]
 This reference is to the listing requirements in the regulations effective April 1, 1993. The ALJ issued his decision while the 1993 regulations were in effect; Young refers to them and the Secretary does not argue to the contrary. I rely on them not to show per se disability, but only as an indication further evaluation is needed