**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 9 2004**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

JAMES TIMMONS,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

      Defendant-Appellee.

No. 04-7007
(D.C. No. CV-02-562-S)
(E.D. Okla.)

ORDER AND JUDGMENT [*]

Before **ANDERSON** and **BALDOCK** , Circuit Judges, and **MARTEN** ,[**] District Judge.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]    The Honorable J. Thomas Marten, District Judge, United States District Court for the District of Kansas, sitting by designation.

Plaintiff-appellant James Timmons appeals from an order of the district court affirming the Commissioner's decision denying his applications for Social Security disability and Supplemental Security Income benefits (SSI). Timmons filed for disability benefits on September 11, 2000 and for SSI on August 18, 2000. The medical evidence revealed that Timmons had impairments including back problems, loss of his left eye, and alcohol abuse. The agency denied his applications initially and on reconsideration.

On December 17, 2001, Timmons received a de novo hearing before an administrative law judge (ALJ). The ALJ determined that Timmons could not return to his past relevant work, which required heavy exertion. He found, however, that Timmons retained the residual functional capacity (RFC) to perform "very wide essentially full sedentary" work "except jobs requiring good bilateral vision and good stereoscopic depth perception." Aplt. App. at 16. Applying the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, table 1, rule 201.27 (the grids), the ALJ concluded that Timmons was not disabled within the meaning of the Social Security Act. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.

STANDARD OF REVIEW

We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the

correct legal standards were applied.  *See Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989) (quotations omitted).

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled.  *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant bears the burden of establishing a prima facie case of disability at steps one through four.  *See id.* at 751 n.2.  If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given his age, education, and work experience.  *See id.* at 751.

FACTS

Mr. Timmons is missing his left eye.  He lost the eye from glaucoma at the age of eighteen and has a prosthesis implanted in the socket.

In 1996, Timmons underwent cataract surgery on his right eye and received a plastic intraocular lens implant.  Dr. Shea, a consulting physician who examined him, estimated his best corrected visual acuity in the right eye at 20/40.

Dr. Jaiswal, who also examined Timmons, estimated his uncorrected vision in the same eye at 20/25. [1]

In August 2000, Timmons was working for a tree trimming company when a safety rope gave way and he fell at least thirty feet, landing on his buttocks. He suffered a burst fracture of his spine at the L2-L3 level, with ninety percent stenosis of the canal. He also broke two ribs. Doctors at Baylor University Medical Center preformed an anterior corpectomy at L3, with fusion and instrumentation. Timmons was in a body cast for months, and lost thirty pounds. By the time of the hearing, although he was over six feet tall, Timmons weighed only 148 pounds.

Although follow-up was ordered after the traumatic back injury, Timmons has not continued to see physicians for his back problems. He explained at the hearing that he cannot afford medical treatment. Although prescribed painkillers,

---

[1]     Because of the way Dr. Jaiswal's opinion (exhibit 10F) was collated, there was some confusion about his opinion at the hearing. Mr. Timmons' attorney stated that Dr. Jaiswal's written report, page one of exhibit 10F, stated that he had 20/25 vision. Aplt. App. at 148. The attorney believed that Dr. Jaiswal's notes, however, on page seven of the same report, showed 20/40 vision. *Id.* at 154. The ALJ concluded that the 20/25 reading was an error and stated that he would use the 20/40 reading as the correct one. *Id.* at 220-21. Page seven of exhibit 10F does not contain Dr. Jaiswal's notes, however; they are plainly Dr. Shea's notes, which have erroneously been attached to exhibit 10F rather than to exhibit 9F. Thus, the record does not illustrate an inconsistency, and the ALJ correctly stated in his ultimate decision that Dr. Jaiswal's report "revealed 20/25 visual acuity in the right eye without correction." *Id.* at 14.

he refuses to take them, preferring to live with the pain rather than to become addicted.

Despite his serious back injuries, Timmons attempted to continue doing some work to pay his child support obligations by driving a backhoe for Atoka County. He was able to perform this part-time work, which he obtained thanks to his ex-father-in-law's ties to county government, through an unusual arrangement that allowed him to skip work on days that his back hurt too badly for him to get out of bed. He was also permitted to lie down at times on the job site. His visual impairments did not bother him at this job because "[a] back hoe, I'm off in the bar ditch, there's nothing there to hit." Aplt. App. at 238. The ALJ did not consider this work for the county to be substantial gainful employment. We agree.

At the ALJ hearing, Timmons described his past work, which involves heavy, unskilled manual labor. There was no vocational expert testimony at the hearing about the effect of Timmons' visual deficits on the job base or on his ability to do sedentary work. There was, in fact, no expert vocational testimony at all. The ALJ did, however, pose the following hypothetical question to Timmons:

> Suppose there were a job, this is a lot different than what you've done, but suppose there was a job, like being a, a, a receptionist in an office building, all could, all you had to do was sit and stand whenever you needed to for short periods, and people

would come in the building and ask questions, such as where's Mr. Saunders office and what time's Mr. Saunders back and you just tell them he'll be back at 3, or the parking is at the side of the building, you don't have to lift anything heavier than pen, pencil, pad of paper, may be somebody leaves a briefcase that weighs less than a gallon of milk, you have to put it on the table, and you're, and when you're sitting, you're sitting in a chair, like you're sitting in now, and there's no bouncing around, there's no hand levers, there's no foot levers, now that'd be a lot easier physically than what you're doing, wouldn't it?

*Id.* at 255.

Timmons responded, "Yeah. As long as they let me lay down when I needed to." *Id.* When the ALJ indicated he could only lay down at breaks, Timmons indicated that he doubted he could perform such work for eight hours a day, five days a week. The ALJ's question did not discuss any visual demands that the hypothetical receptionist job might entail, despite Timmons' testimony that he cannot read fine print in a newspaper and can only watch television for half an hour at a time before getting a headache.

Additionally, the ALJ made no effort at the hearing to reconcile the discrepancies between Dr. Jaiswal's and Dr. Shea's estimates of Timmons' visual acuity. Instead, he engaged in an impromptu medical examination:

Q. Yeah. All right. How many fingers am I holding up?

A. That's two.

Q. Okay. All right. Now how many am I holding up?

A. Four.

-6-

Q. Okay. And what distance apart are we, about 10 feet?

A. Yeah, probably.

*Id.* at 261.

In his decision, the ALJ found that the loss of Timmons' left eye was a severe impairment. He stated that Timmons could not return to any of his past relevant work. He then opined, however, that "[i]f claimant's vision were a serious problem he could not have done his part time back hoe driving job after the alleged onset of disability." *Id.* at 14. The ALJ did not discuss the visual requirements of the backhoe job. He made no attempt to correlate the visual requirements of work part-time driving a backhoe, outdoors during the daytime in a ditch with no obstacles, with the sort of sedentary office work he believed Timmons was capable of performing on a full-time basis. He also did not discuss how the visual requirements of the outdoor driving job correlated with those of the full range of sedentary jobs.

The ALJ completed his RFC assessment and found Timmons capable of performing "very wide essentially full sedentary except jobs requiring good bilateral vision and good stereoscopic depth perception." *Id.* at 16. He then applied the grids, concluding that rule 201.27 dictated a finding of "not disabled."

ANALYSIS

There was no basis for mechanical application of the grids here. Mr. Timmons' lack of vision in his left eye is a nonexertional impairment that required consideration of vocational factors specific to his case. Since the ALJ did not obtain any vocational testimony or cite any other vocational resource, and since he failed to support his conclusion that Timmons' eye problems were so insignificant as to have essentially no impact on the job base, we must reverse and remand for further consideration of Timmons' claim.

The mere existence of a visual impairment did not, of course, prevent the ALJ from relying on the grids. *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). If the ALJ found that the visual impairment would have no significant effect on Timmons' ability to do a full range of sedentary work, he would still be free to apply the grids. *Id.* Such a finding, however, like any of the ALJ's determinations, would have to be supported by substantial evidence. *See Sykes v. Apfel*, 228 F.3d 259, 261 (3d Cir. 2000) (concluding that ALJ erred by failing to support his conclusion that loss of binocular vision from blindness in one eye would not significantly erode the occupational base for claimant with other, exertional impairments).

Such substantial evidence is absent here. In fact, there are three substantial difficulties with the ALJ's approach. The first difficulty arises because he limited

Timmons to unskilled, sedentary work. The ALJ eliminated Timmons' past heavy work from consideration, along with medium and light work, due to his severe back impairment. He concluded that Timmons can only do sedentary work, and has no transferable skills.

The Commissioner has recognized that the visual demands of unskilled sedentary work differ markedly from those in other categories. While as a general matter, there will be a substantial number of jobs across exertional levels available for anyone who "retains sufficient visual acuity to be able to handle and work with rather large objects," SSR 85-15, 1985 WL 56857, at *8, this is not true of sedentary, unskilled work:

> Most sedentary unskilled occupations require working with small objects. If a visual limitation prevents an individual from seeing the small objects involved in most sedentary unskilled work . . . there will be a significant erosion of the sedentary occupational base. These cases may require the use of vocational resources.

SSR 96-9p, 1996 WL 374185, at *8.

The ALJ's found that Timmons' loss of his left eye was a "severe" impairment. Aplt. App. at 14. The second problem with his decision arises because this finding of severity appears inconsistent with his conclusion that the eye impairment would pose only an "insignificant" effect on his ability to do the full range of sedentary work. At the very least, the ALJ should have explained how a "severe" impairment at step two became "insignificant" at step five.

-9-

The third problem arises because the only reasons the ALJ gave for concluding that Timmons' eye problems were "insignificant" was the fact that he drives a backhoe part time, and that one consulting physician assigned him uncorrected 20/25 vision in his right eye. The ALJ made no finding about the visual demands of the backhoe driving as Timmons performed it, and no attempt to correlate them with sedentary work. As Timmons explained, the visual demands of the backhoe job appear to be minimal.

The ALJ's hypothetical sedentary receptionist position contained no specific visual demands. In any event, there was no vocational testimony concerning the visual demands of the position, or the more general visual demands of a broad range of sedentary work, as compared to Timmons' visual acuity. As for Dr. Jaiswal's opinion, this concerned only visual acuity in Timmons' *right* eye; the point is that he cannot see with his *left* eye at all.

Finally, although the ALJ made a conclusory statement that he found Timmons' testimony "not credible for the reasons set forth in the body of the decision," *id.* at 16, there are no specific reasons given for discounting Timmons' credibility anywhere in the ALJ's decision. Timmons testified that his visual restrictions limited his ability to see small objects, and the ALJ cited no evidence to contradict this testimony.

We must remand for the limited purpose of obtaining vocational expert testimony or other additional evidence of the effect of the identified nonexertional limitations on Timmons' ability to do substantially the full range of sedentary work. We remind the ALJ that he

> may not rely conclusively on the grids unless he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level. Each of these findings must be supported by substantial evidence.

*Thompson*, 987 F.2d at 1488.

The judgment of the district court is REVERSED, and the case is REMANDED with instructions to REMAND to the Commissioner for further proceedings in accordance with this order and judgment.

Entered for the Court

Stephen H. Anderson
Circuit Judge

-11-