FILED
United States Court of Appeals
Tenth Circuit

August 24, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BELMA JAZVIN,

      Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

      Defendant - Appellee.

No. 15-1498
(D.C. No. 1:14-CV-02750-MEH)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **McKAY**, and **O'BRIEN**, Circuit Judges.
_____

      Belma Jazvin appeals a decision by the Commissioner of Social Security

denying her application for benefits.  We affirm.

## I.  **BACKGROUND**

      Ms. Jazvin came to the United States in 1995 as a refugee from the Bosnian

war.  She was employed until 2011, when she lost her job at a 7-Eleven store as part

of a change in ownership.  After a year of receiving unemployment benefits and

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

trying unsuccessfully to find a new job, Ms. Jazvin applied for disability insurance benefits and supplemental security income.  Ms. Jazvin claimed she was unable to work because of schizophrenia, complications from medications, dizziness, shakes, and vision issues.  Following a hearing, an administrative law judge (ALJ) denied Ms. Jazvin's application.

The ALJ followed the five-step disability-determination process.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (summarizing the five-step process).  He found that Ms. Jazvin had three severe impairments:  schizophrenia, diplopia of the right eye, and dizziness.  The ALJ determined Ms. Jazvin had the residual functional capacity (RFC) to

> perform light work . . . except she is not required to lift and carry more than 20 pounds occasionally and 10 pounds frequently.  She is not required to climb scaffolds, ladders, ropes or balance.  She is not required to work at unguarded heights or near unguarded hazardous mechanical equipment.  She is not required to see out of more than one eye.  She is not required to understand, remember, and carry out more than simple instructions.  She is not required to have more than superficial interaction with the public.

Aplt. App. Vol. 1 at 21.  After considering testimony from a vocational expert (VE), the ALJ found Ms. Jazvin was capable of performing her past relevant work as an assembler, as well as other jobs that existed in the national economy.  He therefore concluded Ms. Jazvin was not disabled and denied her application for benefits.  The appeals council denied review and the district court affirmed.[1]

---

[1] Under 28 U.S.C. § 636(c), the parties consented to have a magistrate judge conduct all proceedings.

## II. STANDARD OF REVIEW

We review the district court's ruling de novo, independently determining whether the ALJ correctly applied the law and whether substantial evidence supports his findings. *Wall*, 561 F.3d at 1052.

## III. ANALYSIS

Ms. Jazvin argues the ALJ failed to develop an adequate record. Specifically, she argues the ALJ was required to (1) order a consultative examination and (2) inquire further about the effect of Ms. Jazvin's mental and physical conditions on her daily activities and ability to work. We disagree.

It is the claimant's burden to prove she is disabled. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). The ALJ must "ensure that an adequate record is developed . . . consistent with the issues raised." *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (internal quotation marks omitted).

### A. *Consultative Examination*

The ALJ's duty to develop the record may require ordering a consultative examination, but the ALJ "has broad latitude" in determining whether to do so. *Id*. at 1166. A consultative examination may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or "additional tests are required to explain a diagnosis." *Id*.; *see also* 20 C.F.R. §§ 404.1519a(b), 416.919a(b) (describing situations that may require a consultative examination). But there is no need for a consultative examination when the ALJ has enough information to make a disability determination. *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir.

2008).  And if the claimant's attorney does not request a consultative examination, the ALJ has no duty to order one unless the need "is clearly established in the record."  *Hawkins*, 113 F.3d at 1168.

Ms. Jazvin's attorney did not request a consultative examination.  Nevertheless, she argues the record clearly establishes the need for one to explore how her mental and physical conditions may affect her ability to work.  We conclude the ALJ had enough information to make a disability determination.

The record contains Ms. Jazvin's medical records from the years before and after her alleged onset of disability.  Although these records, which the ALJ reviewed and accurately summarized, show Ms. Jazvin suffered chronic schizophrenia, they also show her symptoms were well controlled with medication.  They also detail the physical side effects of Ms. Jazvin's antipsychotic medication—namely, head tilt (torticollis), unpredictable muscle movements (dystonia), double vision (diplopia), and eyes rolling up (oculogyrate crisis)—as well as the severity of her side effects and the measures doctors took to minimize them.

The ALJ also reviewed a function report Ms. Jazvin completed as part of her disability application.  The report describes Ms. Jazvin's symptoms and the side effects of her medication.  Among other things, Ms. Jazvin complained her medication left her dizzy and caused her right eye to roll back, which impaired her vision.  Ms. Jazvin also claimed she had trouble lifting more than ten pounds, concentrating, completing tasks, following instructions, and getting along with others.  But the report also reveals that Ms. Jazvin lived independently with a

roommate; had no problems caring for her personal hygiene; prepared simple meals on a daily basis; and completed household chores like vacuuming, dusting, cleaning, laundry, and ironing. Ms. Jazvin went shopping for groceries, paid bills, and used a checkbook. For fun, she watched television and movies, read, used the internet, tended her flowers, and drove to the mountains on the weekends.

An agency psychologist reviewed Ms. Jazvin's records and found that her impairments were not severe and did "not significantly limit [her] physical or mental ability to do basic work activities." Aplt. App. Vol. 1 at 71-72. The psychologist also opined that Ms. Jazvin had only mild restrictions on her activities of daily living, mild difficulties maintaining social functioning, mild difficulties maintaining concentration, and no repeated episodes of decompensation.[2]

In addition to these records, the ALJ considered and weighed Ms. Jazvin's testimony, as well as the testimony of her friends and a vocational expert. The ALJ asked Ms. Jazvin about her symptoms, the medications she was taking, and their side effects. Two of Ms. Jazvin's friends testified regarding their observations of her mental and physical condition. Finally, the VE testified that someone with

---

[2] The ALJ found the agency psychologist's opinion persuasive, *see* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (agency psychologists are highly qualified psychologists "who are also experts in Social Security disability evaluation"), but the ALJ tempered his RFC assessment in Jazvin's favor by limiting her to light work that did not require her to balance. The RFC excluded work near unguarded heights or hazardous mechanical equipment and work that would require her to see out of more than one eye; lift more than ten pounds frequently; understand, remember, and carry out more than simple instructions; or have more than superficial interaction with the public.

Ms. Jazvin's RFC could perform her past work as an assembler, as well as at least two other jobs existing in the national economy.

Taken together, this evidence was sufficient for the ALJ to make a disability determination. Ms. Jazvin points to no direct conflict in the medical evidence,[3] inconclusive medical evidence, or additional tests needed to explain her diagnoses. *See Hawkins*, 113 F.3d at 1166. Because the record does not clearly establish the need for a consultative examination, the ALJ was not required to order one. *See id.* at 1168.

Ms. Jazvin argues that *Thompson v. Sullivan*, 987 F.2d 1482 (10th Cir. 1993), compels a different result. In that case, we concluded the ALJ should have ordered a consultative examination because there was "no evidence upon which to make a finding as to RFC." *Id.* at 1491. But in *Thompson*—unlike this case—the medical records were inconclusive, the hearing lasted only ten minutes, the claimant was the only witness and was asked only superficial questions by her attorney, and the ALJ did not ask any questions at all. *See id.* at 1485, 1491.

## B. *ALJ's Inquiry*

We also reject Ms. Jazvin's argument that the ALJ's questioning was inadequate. "The ALJ does not have to exhaust every possible line of inquiry in an

---

[3] To the extent the agency psychologist's opinion conflicted with the Med-9 form completed for the Colorado Department of Human Services, the ALJ appropriately gave little weight to the Med-9 form, which contained a conclusory opinion without any meaningful analysis. *See Chapo v. Astrue*, 682 F.3d 1285, 1289 (10th Cir. 2012) (stating the ALJ properly gave no weight to a conclusory Med-9 form that "lacked any functional findings").

attempt to pursue every potential line of questioning." *Id*. Rather, the ALJ need only ask sufficient questions to determine the nature of a claimant's impairments, the medical treatment she received, and the impact of her impairments on her daily activities. *Musgrave v. Sullivan*, 966 F.2d 1371, 1375 (10th Cir. 1992). As noted above, the ALJ asked Ms. Jazvin about her symptoms, medications, and side effects. He also asked her about how her impairments affect her ability to drive and perform other activities. Especially when reviewed in conjunction with the other record evidence, the ALJ's inquiry was sufficient. *See Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994). This is especially so because Ms. Jazvin's attorney did not seek to present any additional evidence or otherwise supplement the record. *See Maes*, 522 F.3d at 1097 ("[W]e will not ordinarily reverse or remand for failure to develop the record when a claimant is represented by counsel who affirmatively submits to the ALJ that the record is complete.").

## IV. **CONCLUSION**

We affirm the district court's ruling.

ENTERED FOR THE COURT,

Scott M. Matheson, Jr.
Circuit Judge