**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 20 2004**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

JACK G. HELMER,

Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

Defendant-Appellee.

No. 03-7124
(D.C. No. 02-CV-665-W)
(E.D. Okla.)

ORDER AND JUDGMENT *

Before **ANDERSON** and **BALDOCK** , Circuit Judges, and **MARTEN** ,** District
Judge.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

\*\* The Honorable J. Thomas Marten, District Judge, United States District
Court for the District of Kansas, sitting by designation.

Plaintiff-appellant Jack G. Helmer appeals from an order of the district court affirming the Social Security Administration's decision denying his applications for disability insurance benefits and supplemental security income benefits under the Social Security Act. We exercise jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. We affirm.

Plaintiff claims that he has been disabled for purposes of the Social Security Act since June 1, 1999. After his applications for benefits were denied initially and on reconsideration, a de novo hearing was held before an administrative law judge (ALJ). In a decision dated June 27, 2002, the ALJ denied plaintiff's applications for benefits at step five of the five-part sequential evaluation process for determining disability,[1] concluding that plaintiff is not disabled because: (1) while he suffers from severe impairments in the form of left hip degenerative osteoarthritis and trochanteric bursitis, club foot residuals, history of illicit drug abuse, and borderline mental retardation which prevent him from performing his past relevant work as a welder, brake presser, and machinist, he is capable of performing a range of sedentary work, so long as he is given the option to sit or stand at will; and (2) based on the testimony of the vocational expert, he has the residual functional capacity (RFC) to work as a production

---

[1]     The governing regulations set forth a five-step sequential evaluation process for determining if a claimant is disabled, and the process is set forth at 20 C.F.R. §§ 404.1520 and 416.920 (2002).

inspector or sedentary assembly worker, and these jobs exist in significant number in both the national and the applicable regional economies.

In January 2003, the Appeals Council denied plaintiff's request for review of the ALJ's decision. Plaintiff then filed a complaint in the district court. After the parties consented to having a magistrate judge decide the case, a magistrate judge entered an order affirming the ALJ's decision denying plaintiff's applications for benefits. This appeal followed.

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). In reviewing the ALJ's decision, we "neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, we review the ALJ's decision only to determine whether the correct legal standards were applied and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Doyal*, 331 F.3d at 760.

In this appeal, plaintiff claims that the ALJ committed reversible error by: (1) failing to properly evaluate the opinions of the examining physicians; (2) failing to correctly assess the severity of plaintiff's left-hand and left-arm impairments at step two of the evaluation process; (3) failing to properly assess plaintiff's credibility; and (4) failing to propound a proper hypothetical question

to the vocational expert (VE).  We disagree with plaintiff on each of these points, and we therefore affirm the ALJ's decision denying plaintiff's applications for benefits.

**I.**

As noted by the ALJ in his decision, "[t]wo conflicting physical *Residual Functional Capacity Evaluations* . . . are of record.  Both [were] performed by 'consultative examiners' — one provided by the claimant (Dr. Trinidad); and one by the Social Security Administration (Dr. Simpson)."  Aplt. App., Vol. 2 at 21.  Because of their importance to the issues raised in this appeal, we will summarize the two conflicting consultative reports and the ALJ's findings regarding the same before proceeding to the specific issues raised by plaintiff.

In November 2001, plaintiff's counsel sent plaintiff to Dr. Trinidad, an osteopath and board certified internist, for a consultative examination.  *Id.* at 221-27.  Although the parties are at odds regarding the weight that should be accorded to Dr. Trinidad's opinions on the issue of whether plaintiff is disabled, there does not appear to be any significant dispute regarding plaintiff's medical history, and Dr. Trinidad summarized plaintiff's medical history in his consultative report as follows:

> Jack Helmer is a 41 year-old male who has a history of multiple injuries.  He has a history of congenital club foot affecting the right foot.  He underwent seven surgical procedures as a child. . . .

He had a motorcycle accident in [the early 1980s] and sustained a fracture of the left hip and arm, in addition to rib fractures and a pneumothorax. He underwent open reduction and internal fixation of the left hip fracture. . . . He underwent open reduction and internal fixation of a left radius fracture with placement of an orthopedic plate and screws.

He had a work-related injury in 1993 . . . to his neck and right shoulder. . . . He was found to have a rotator cuff tear and impingement syndrome and underwent surgical intervention. . . . His neck symptoms were treated conservatively.

In approximately 1987 he had an injury to his left knee and underwent arthroscopic surgery. He was found to have a medial meniscus tear and traumatic chondromalacia. In 1995 he had a right knee injury and underwent surgical intervention for a medial meniscus tear and traumatic chondromalacia.

He has a history of chronic low back problems which, in all probability, resulted from his abnormal gait from his congenital right foot abnormalities and from his left hip fracture.

*Id.* at 221-22.

Based on his examination of plaintiff in November 2001, Dr. Trinidad concluded that plaintiff is unable to perform even sedentary work. *Id*. at 227. He explained his opinion as follows:

The cumulative effect of [plaintiff's] injuries results in significant impairment to the total body structure. His injuries are such that they prevent him from standing or walking for prolonged periods. He is precluded from any repetitive bending, stooping and lifting. He is not able to perform fine manipulative work with his left hand and arm and is not able to sit for prolonged periods. As a result of these multiple physical impairments, combined with his education and the fact that he has great difficulty with regard to reading and writing, and his training and experience are such that, in my opinion in all probability [he] cannot be gainfully employed in this region of this

country for at least the next twelve months and, in all probability, indefinitely.

*Id.* at 224.

In order to further evaluate plaintiff, the Commissioner sent plaintiff to Dr. Simpson, an orthopedic surgeon, for a consultative examination in March 2002. *Id.* at 262-71. After examining plaintiff and having x-rays taken of plaintiff's lumbosacral spine, right shoulder, and left hip, Dr. Simpson diagnosed plaintiff as suffering from: (1) primary degenerative osteoarthritis, left hip; (2) trochanteric bursitis, left hip; (3) old pelvic fracture, left acetabulum; (4) some ectopic bone, acetabular brim; (5) chronic low back pain; (6) spina bifida occulta; and (7) club foot residuals, minimal, right foot.      *Id.* at 264. Dr. Simpson also reported the following in his consultative report:

> The patient gets about the [examining] room adequately. . . . The patient's right foot shows residuals of club foot surgery. I think he has a very good result. He has a little foreshortened foot but he has excellent motion of the tibiotaler and subtaler joints. The patient has full [range of motion] to both knees as well as left ankle and foot. He has decreased rotation internally on the left hip but he has full flexion/extension and abduction bilaterally. The patient's lumbar spine shows full [range of motion] with no limitation. Minimal muscle spasm is noted. He is a little sore about the SI joints.
>
> The upper extremities show a complete full [range of motion] in the shoulder, wrist, hand, and fingers. There's no evidence of inflammatory change or signs of gout or rheumatoid arthritis. The cervical spine shows full [range of motion].

*Id.* at 263.

Dr. Simpson also completed range of motion evaluation charts and a physical medical source statement for plaintiff. With respect to the former, Dr. Simpson reported that all of plaintiff's upper and lower extremities had a full range of motion. *Id.* at 265-68. With respect to the latter, as accurately summarized by the ALJ:

> Dr. Simpson . . . [found] that Mr. Helmer could sit for 8 hours total during an entire 8-hour day; stand for 8 hours total during an entire 8-hour day; and walk for 8 hours total during an entire 8-hour day. Mr. Helmer was considered able to continuously lift and/or carry up to 50 pounds and frequently lift and/or carry 51 pounds and more. Dr. Simpson indicated that Mr. Helmer's use of his feet for repetitive movements, as in pushing and pulling controls, was not limited and that use of his hands for repetitive movements, as in grasping and fingering, was also unlimited.
>
> It was Dr. Simpson's opinion that Mr. Helmer could continuously bend, squat, crawl, climb and reach and he had no restriction of activities involving unprotected heights, being around moving machinery, exposure to marked changes in temperature and humidity, exposure to dust, fumes, and gases, driving, vibrations, and other.

*Id.* at 19 (numerical sub-headings and record citation omitted).

To perform sedentary work, a person must be able to walk and/or stand for at least two hours of an eight-hour workday. *See* Social Security Ruling 96-9p, 1996 WL 374185, at *3 (July 2, 1996). By contrast, to perform light work, the next-most demanding job classification in terms of physical exertion requirements, a person must be able to walk and/or stand for at least six hours of an eight-hour workday. *See* Social Security Ruling 83-10, 1983 WL 31251, *6

-7-

(1983). Based on Dr. Simpson's assessment of plaintiff's physical RFC, plaintiff would not be limited to performing only light or sedentary work, as Dr. Simpson concluded that plaintiff is capable of walking or standing for a full eight-hour workday. As the ALJ noted during the de novo hearing, however, Dr. Simpson's assessment of plaintiff was not entirely consistent, *see* Aplt. App., Vol. 2 at 131, 134, because he also stated, in a cover letter transmitting his consultative report to the Social Security Administration, that "[t]his patient would certainly benefit by work hardening and weight reduction. . . . Certainly retraining into some type of light or more sedentary work activity would work for him," *id.* at 262.

As noted above, the ALJ concluded that plaintiff is limited to performing a range of sedentary work, with a sit/stand option, and he based this conclusion on his finding that plaintiff's "club foot (with past multiple operations) and left hip, will not allow him to stand and walk six [hours] out of an eight-hour work day." *Id.* at 21. In reaching this conclusion, the ALJ relied on the opinions of both Dr. Simpson and Dr. Trinidad. First, as the ALJ explained on the record during the de novo hearing, the ALJ gave plaintiff the benefit of the doubt and concluded, based on the statement in Dr. Simpson's cover letter to the Social Security Administration, that plaintiff is limited to performing some type of light or sedentary work. *Id.* at 134, 137. Second, in his decision, while he "adopt[ed] the physical RFC of Dr. Simpson," *id.* at 25, the ALJ modified Dr. Simpson's

-8-

physical RFC to limit plaintiff to sedentary work, and he based the modification to sedentary work on Dr. Trinidad's opinion that plaintiff is unable to stand or walk for prolonged periods of time. *Id.* at 22, 25.

## II.

### A. Opinions of Dr. Trinidad and Dr. Simpson

As noted above, the ALJ rejected Dr. Trinidad's opinion that plaintiff is unable to perform sedentary work, and the ALJ instead concluded that Dr. Simpson's physical RFC, as modified by Dr. Trinidad's limitation regarding prolonged standing and walking, "is best supported by the *medical* evidence of record." Aplt. App., Vol. 2 at 21. We conclude that the ALJ's analysis of the opinions of Dr. Trinidad and Dr. Simpson is supported by substantial evidence in the record, and that the ALJ made a reasoned determination that Dr. Trinidad's opinion is not consistent with the record as a whole.

To begin with, we agree with the ALJ that Dr. Trinidad "fail[ed] to confine his opinion to the medical evidence, offering what can only be viewed as a 'global' assessment based on a variety of medical and non-medical factors, that the claimant 'in all probability . . . cannot be gainfully employed.'" *Id.* Consequently, Dr. Trinidad "offer[ed] an opinion outside his expertise; i.e., an opinion more akin to that offered by a 'vocational expert' than a medical expert." *Id.* at 22.

-9-

In addition, with respect to the medical evidence in the administrative record, we note that plaintiff underwent an electromyogram study (EMG) in March 2002. *Id.* at 21. The physician who performed the EMG reported that plaintiff had: (1) "[n]ormal EMG findings in both upper extremities without evidence of myopathy or neurogenic potentials"; and (2) "[n]ormal EMG of both lower extremities." *Id.* at 261.

Finally, we note that the ALJ addressed Dr. Trinidad's opinion on the record during the de novo hearing, and the ALJ stated that he was going to reject the opinion because it was inconsistent with plaintiff's testimony at the hearing. *Id.* at 136. Specifically, the ALJ made the following findings at the hearing:

> I decline to accept Dr. Trinidad's assessment, because Dr. Trinidad's assessment directly conflicts with the Claimant's own testimony. Dr. Trinidad's assessment would have this man essentially bed-ridden five hours a day, and that is no where near what [he] in fact testified to.
>
>  . . . .
>
> [This] leaves us with a gentlemen who can perform a sedentary-type job with a sit/stand option in an unskilled level. . . . And, that conclusion is well supported . . . by the Claimant's own testimony of his activities. He does his own laundry. He cooks his own meals. He goes grocery shopping. He drives to and from Fort Gibson to shop. He is engaged in a number of activities around the house, such as mowing, installation of electrical lines, installing various electrical switches, even to the point where he's climbing [on to the] roof of the house. He lives by himself, is able to engage in personal care, and even works on cars occasionally, and motorcycles. All of which is consistent with an individual who is not in such severe pain as to render him disabled as Dr. Trinidad assesses. So, I'm going to

-10-

reject Dr. Trinidad's assessment based upon the testimony and the conflicting medical evidence.

*Id.* at 136, 137-38. [2]

Although it would have been preferable for the ALJ to have incorporated his hearing findings regarding Dr. Trinidad and plaintiff's daily activities into his decision, we will nonetheless treat the findings as supplementing the ALJ's decision, as they are consistent with and support the result reached by the ALJ. Accordingly, because the ALJ's decision to reject the opinion of Dr. Trinidad is supported by substantial evidence in the record, we reject plaintiff's claim that the ALJ committed reversible error by failing to properly evaluate the opinions of the examining physicians.

## B. Hand/Arm Impairments

Plaintiff claims that the ALJ failed to correctly assess the severity of his left-arm and left-hand impairments at step two of the evaluation process. We disagree, and we conclude that the ALJ's determination that plaintiff does not

---

[2] We have recognized that an ALJ may not rely on a claimant's minimal daily activities as substantial evidence that the claimant does not suffer disabling pain. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004). Plaintiff's testimony at the hearing, however, went well beyond minimal daily activities. In fact, plaintiff testified that he had recently spent four days digging a twenty-foot long trench as part of a home-remodeling project. *See* Aplt. App., Vol. 2 at 93-95.

suffer from severe left-hand and left-arm impairments is supported by substantial evidence in the record. [3]

First, as noted above, plaintiff testified at the hearing before the ALJ that he is capable of performing a number of physical activities that require the use of his hands and arms, and he did not mention a single limitation with respect to his hands and arms, either left or right. With respect to the alleged left-hand impairment, the ALJ specifically noted this omission, stating on the record at the hearing that "[t]here [was] no mention from the Claimant's own mouth of any limitation in his left hand." *Id.* at 137. Consequently, the ALJ "decline[d] to accept that." *Id.*

Second, while Dr. Trinidad concluded that plaintiff was "not able to perform fine manipulative work with his left hand and arm," Aplt. App., Vol. 2 at 224, Dr. Simpson reported no such limitations. In fact, he specifically stated that plaintiff's "upper extremities show[ed] a complete full [range of motion] in the shoulder, elbow, wrist, hand, and fingers." *Id.* at 263. As noted above, the

_____

[3] In his opening brief, plaintiff claims that the ALJ also erred by failing to assess the severity of his right-shoulder impairment. We will not consider this argument, however, because plaintiff failed to present it to the district court, *see* Aplt. Br., Ex. D at 2-4, and he has not provided any compelling reason to excuse his waiver. *See Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994) ("Absent compelling reasons, we do not consider arguments that were not presented to the district court.").

EMG that was performed on plaintiff also showed no abnormalities with respect to plaintiff's upper extremities. *Id.* at 261.

Finally, as part of the request for review that he submitted to the Appeals Council, plaintiff submitted an affidavit that was executed after the hearing before the ALJ, stating that he had "pain on a daily basis in his left hand and wrist, which makes it difficult to grasp, push, pull and do any repetitive activity[.]" *Id.* at 272. Having reviewed the issue de novo, we agree with the Appeals Council that plaintiff's affidavit did not provide a basis for changing the ALJ's decision. *Id.* at 7, 9. As a result, the Appeals Council was not required to consider the affidavit, and it did not provide a basis for reversing the ALJ's decision. *See Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (construing 20 C.F.R. § 404.970(b) and holding that Appeals Council is not required to consider additional evidence submitted to it unless there is a reasonable possibility that the evidence would have changed the outcome before the ALJ, and that this is an issue which this court reviews de novo on appeal).

## C. Credibility Determination

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). "However, [f]indings as to credibility should be closely and

-13-

affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (quotation omitted).

"A claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). Instead, "[b]efore the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain." *Id.* (citations omitted).

In this case, there is objective medical evidence in the record establishing that plaintiff has pain-producing impairments. Consequently, the ALJ was required to consider plaintiff's allegations of severe pain and "decide whether he believe[d them]." *Id.* at 1489 (quotation omitted). To determine the credibility of pain testimony, the ALJ should consider such factors as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted).

The ALJ found that plaintiff's allegations of disabling pain were not credible because they were not substantiated by objective medical evidence.

*See* Aplt. App., Vol. 2 at 22. Specifically, the ALJ noted that, according to plaintiff's own testimony, he only had three incidents of disabling back pain during the three years prior to the hearing. *Id.* at 24. The ALJ further noted that, while plaintiff claimed that he had to stop working in 1999 due to his back pain, there is no evidence in the record that he sought any form of treatment for his back pain in 1999. *Id.* at 23. Lastly, the ALJ noted that plaintiff's hip pain is not documented in the medical records that are in the administrative record, *id.* at 24, and that plaintiff "reported that he only takes aspirin for pain," *id.* at 23.

The ALJ's credibility determination is supported by substantial evidence in the record. Thus, we see no basis for reversing the ALJ's credibility determination.

## D. Hypothetical Question

Plaintiff claims that the ALJ failed to propound a proper hypothetical question to the VE because the question he posed "did not contain any hand limitations." Aplt. Br. at 40. As set forth above, there is insufficient evidence in the administrative record to support plaintiff's claim that he suffers from a severe hand impairment. As a result, plaintiff's claim is without merit. *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (holding that hypothetical question to VE need only include impairments that are supported by evidentiary record).

-15-

The judgment of the district court is AFFIRMED.

Entered for the Court


J. Thomas Marten
District Judge