**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 14, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JACQUELINE ROMERO,

Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

Defendant-Appellee.

No. 04-2275
(D.C. No. CIV-03-965 LAM)
(D. N.M.)

---

**ORDER AND JUDGMENT** *

---

Before **BRISCOE** , **ANDERSON** , and **BRORBY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore

ordered submitted without oral argument.

Plaintiff-appellant Jacqueline Romero is appealing from the order of the

district court that affirmed the Social Security Commissioner's decision denying

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

her application for disability insurance benefits under Title II of the Social Security Act. Plaintiff is also appealing the portion of the Commissioner's decision that awarded her supplemental security income (SSI) benefits under Title XVI of the Social Security Act. We exercise jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. We affirm, but remand this matter for payment of one month of additional SSI benefits.

## I.

Plaintiff suffers from anterior rib/chest pain, and the Administrative Law Judge (ALJ) found at step two of the five-step sequential evaluation process for determining disability that plaintiff "has had 'severe' impairments consisting of chest wall pain with pain between her ribs, chronic back pain, [and] a chronic pain disorder." [1] Aplt. App., Vol. II at 26. Although the precise etiology of these conditions has apparently not been determined by plaintiff's doctors, plaintiff has been diagnosed as suffering from "[t]horacic/abdominal wall neuropathic (intercostal) pain syndrome" and from "[m]yofacial pain syndrome." *Id.* at 214; *see also id.* at 182 (setting forth diagnosis of "intercostal neuritis"), 335 (setting forth diagnosis of "neuropathic chest wall pain").

_____

[1] The ALJ also found that plaintiff has severe impairments consisting of thyroiditis and an anxiety disorder, but plaintiff has not raised any issues regarding those impairments in this appeal.

In his decision, the ALJ found that plaintiff was not entitled to disability insurance benefits, however, because: (1) it is undisputed that plaintiff's insured status for purposes of disability benefits expired on June 30, 2000; and (2) the ALJ found that plaintiff's condition was not disabling until March 13, 2001, the day she had surgery to have a thoracic spinal cord stimulator implanted in her back for pain relief. *Id.* at 26. Thus, while the ALJ determined that plaintiff was entitled to SSI benefits as of March 13, 2001, *id.* at 28, he denied her claim for disability benefits, concluding that plaintiff "was not disabled prior to or on June 30, 2000, the date she last met the insured status requirements of Title II." *Id.* More specifically, the ALJ found that: (1) plaintiff "retained a residual functional capacity to perform a full range of sedentary work from March 15, 1999, her alleged onset date, to March 13, 2001," *id.*; and (2) "[i]n view of [plaintiff's] vocational profile . . . coupled with her residual functional capacity for sedentary work . . ., a finding of 'not disabled' [was] directed by medical-vocational rules 201.25 and 201.26," *id.*

In August 2003, the Appeals Council denied plaintiff's request for review of the ALJ's decision. Plaintiff then filed a complaint in the district court. In September 2004, the magistrate judge, sitting for the district court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1), entered an order affirming the ALJ's decision. This appeal followed.

-3-

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). In reviewing the ALJ's decision, we "neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, we review the ALJ's decision only to determine whether the correct legal standards were applied and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Doyal*, 331 F.3d at 760.

**II.**

In this appeal, plaintiff has asserted two claims. First, plaintiff claims the ALJ's finding that she was not disabled until March 13, 2001 is not supported by substantial evidence in the record. Second, plaintiff claims the ALJ erred by relying on the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, at step five of the evaluation process because he failed to properly evaluate her nonexertional pain impairment.

**A. Onset Date**

With respect to the onset date issue, plaintiff's medical records indicate that she received a significant amount of treatment for pain relief between July 2000 and March 2001. Specifically, plaintiff received a number of intercostal nerve block injections, and she was also prescribed neurontin, a strong pain relief

medication. *See* Aplt. App., Vol. II at 175-80, 189, 214-15, 216, 220, 229-32, 335-36. It also appears that plaintiff was using a TENS unit for pain relief during this time period, and that she had at least one thoracic epidural. *Id.* at 189, 216, 232. In addition, in a medical record dated August 14, 2000, one of plaintiff's doctors reported the following:

> [Plaintiff] is a 39-year-old who has a main complaint of chest and abdominal wall pain from the inferior thoracic vertebra to right upper quadrant abdomen. She has been managed by Presbyterian Pain Wellness Center . . . . Apparently, over there she was responding pretty well to intercostal nerve blocks. Over time, the pain has been progressive and persistent, sharp and not responding very well to opiate medication. The pain has always been right-sided and currently it is impairing her sleep pattern, as well as regular activities.

*Id.* at 214; *see also id.* at 335 (medical record dated August 14, 2000 reporting neuropathic chest wall pain "graded as 10/10 presently" and as 6/10 following several intercostal nerve block injections). Further, plaintiff's medical records indicate that her pain continued to get worse during the remainder of 2000 and into 2001. *Id.* at 229-31. By mid-January 2001, plaintiff's doctors considered her to be a candidate for the spinal cord stimulator surgery. *Id.* at 229.

In his decision, the ALJ did not specifically analyze the medical records from the July 2000 to March 2001 time period. Instead, the ALJ relied on the following analysis:

> As stated above, the claimant alleges disability since March 15, 1999. However, there are few medical records for calendar years

1999 and 2000.  Moreover, my review of those medical records does not show that she had any chronic, disabling medical conditions.  Specifically, the claimant did have some tenderness over her ribs; but, she had no spinal tenderness.  In fact, as late as [January] 2001, x-rays were taken of the claimant's lumbar and thoracic spine [and] were interpreted as normal with no evidence of significant trauma and only 'mild' degenerative changes.  (Exhibit 10F, p. 8).

Based on these medical records, I do not find that the claimant's rib pain or infrequent chest wall pain rendered her disabled.  However, as of March 13, 2001, [the date of the spinal cord stimulator surgery], I do find sufficient medical documentation in the record evidence establishing that she was, in fact, under a disability.

*Id.* at 26.

The ALJ's analysis is not entirely consistent with the record.  First, the medical records from July 2000 forward do show that plaintiff suffered from a chronic pain condition, and, while plaintiff received periodic relief from the condition, it persisted and got progressively worse.  Second, the ALJ's reliance on the negative x-rays from January 2001 is misplaced.  Most importantly, the negative x-rays apparently had no impact on how plaintiff's treating physicians perceived her condition or treated it.  To the contrary, plaintiff's doctors proceeded with the spinal cord stimulator surgery despite the negative x-rays.  Finally, the fact that plaintiff did not have "spinal tenderness" seems to be beside the point, as the reference would appear to be referring to some sort of posterior tenderness, while plaintiff's pain complaints are related to her anterior ribs and chest wall.

On the other hand, while plaintiff was treated in June 1999 for "recurrent right intercostal neuritis," which treatment included injections of pain relief medication, a referral for a nerve block injection, and a prescription of Demerol "to take as needed for continued pain," *id.* at 182, there is a gap in plaintiff's medical records between June 1999 and June 2000, and it appears that plaintiff received no medical treatment for her pain condition during that time period. It is also unclear whether plaintiff was taking any pain medication during that time period.

Both in the proceedings below and in this appeal, plaintiff has not made any attempt to show that she received medical treatment for her pain condition between June 1999 and June 2000. As a result, while we do not discount the relevance of the post-June 2000 medical evidence to the onset date issue, *see Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479 (10th Cir. 1993), we nonetheless conclude that the ALJ's finding that plaintiff was not disabled as of June 30, 2000 is supported by substantial evidence in the record. We therefore affirm the ALJ's denial of plaintiff's claim for disability benefits. *See Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995) (affirming ALJ's finding that claimant's disability onset date was after expiration of claimant's insured status where finding was supported by substantial evidence).

The question of whether the ALJ properly analyzed the onset date issue for purposes of plaintiff's claim for SSI benefits raises different issues, however. To begin with, the claim for SSI benefits does not require a June 30, 2000 onset date. Instead, to be entitled to SSI benefits, plaintiff must show that she was disabled between February 20, 2001, the date she filed her application for SSI benefits, [2] and December 4, 2002, the date of the ALJ's decision. *See* 20 C.F.R. §§ 416.330, 416.335, and 416.1476(b)(1). [3]

In her opening brief, plaintiff asserts that "[t]he onset date is . . . critical because she would have received additional months of SSI benefits if the ALJ had found her to have been disabled on [a date earlier than March 13, 2001]." Aplt. Opening Br. at 16-17. Plaintiff is only partially correct. First, under the controlling regulations, SSI benefits cannot be awarded retroactively. *See* 20 C.F.R. § 416.335; SSR 83-20, 1983 WL 31249, at *1 (1983); *Kepler v. Chater*, 68 F.3d 387, 389 (10th Cir. 1995). Consequently, February 20, 2001 was the earliest date that plaintiff could have been eligible for SSI benefits. Second, even if plaintiff was disabled as of February 20, 2001, March 2001 was the earliest month

[2]     Although plaintiff's application for SSI benefits was not available for inclusion in the administrative record, *see* Aplt. App., Vol. II at 4, the ALJ stated in his decision that plaintiff filed her application on February 20, 2001, *id.* at 25, and neither party has challenged the ALJ's statement.

[3]     All citations herein to the Code of Federal Regulations are to the regulations that were in effect at the time of the ALJ's decision in December 2002.

for which she could have been paid SSI benefits.    *See* 20 C.F.R. § 416.335.  As things presently stand, the ALJ found that plaintiff became disabled on March 13, 2001, and this meant that she should have received her first payment of SSI benefits sometime in April 2001.    *Id.* at § 416.330(a).  As a result, if it is now determined that plaintiff was disabled as of February 20, 2001, this would entitle her to only one month of additional SSI benefits.

Because the ALJ found that plaintiff did not become disabled until March 13, 2001, he implicitly found that plaintiff was not disabled as of February 20, 2001.  For purposes of the onset date issue and plaintiff's claim for SSI benefits, the controlling issue is therefore whether there is substantial evidence in the record to support the ALJ's implicit finding that plaintiff was not disabled as of February 20, 2001, and we conclude the answer is no.

As noted above, by mid-January 2001, plaintiff's condition had deteriorated to the point where her doctors considered her to be a candidate for the spinal cord stimulator surgery.    *See* Aplt. App., Vol. II at 229.  There is also no indication in plaintiff's medical records that her condition subsequently worsened in any significant way between February 20, 2001 and March 13, 2001, the day of the surgery to implant the spinal cord stimulator.  Moreover, the ALJ did not find that plaintiff's disabled status as of March 13, 2001 was the result of the surgery itself.  Rather, the ALJ found only that the surgery "substantiate[d] the

seriousness of [plaintiff's] right-sided pain." *Id.* at 28. Consequently, we conclude that the ALJ's implied finding that plaintiff was not disabled on February 20, 2001 is not supported by substantial evidence in the record.

A full remand of the SSI claim to the Commissioner so that the ALJ can make a factual finding as to whether plaintiff was disabled as of February 20, 2001 is not necessary, however. Most importantly, there is no evidence in the record, medical or otherwise, to support the ALJ's finding that plaintiff was disabled on March 13, 2001, but not on February 20, 2001, only twenty-one days earlier. Accordingly, in the interest of judicial economy, we affirm the award of SSI benefits, but remand this matter to the Commissioner with directions to pay plaintiff one month of additional SSI benefits.

**B. Use of the Grids**

The ALJ found that plaintiff "retained a residual functional capacity to perform a full range of sedentary work from March 15, 1999, her alleged onset date, to March 13, 2001." Aplt. App., Vol. II at 28. Because the ALJ also found that plaintiff could not perform her past relevant work, *id.*, he then applied the grids to determine if there were other jobs that plaintiff could have performed, and he concluded that "a finding of 'not disabled' is directed by medical-vocational rules 201.25 and 201.26," *id.* This was the extent of the ALJ's step five analysis, and the ALJ did not make any specific findings as to whether

-10-

plaintiff's pain condition had resulted in any significant nonexertional limitations, as he is required to do before using the grids.

It is well established in this circuit that "resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). This court has also recognized, however, that "[t]he mere presence of a nonexertional [pain] impairment does not preclude reliance on the grids." *Id.* Instead, "[t]he pain must interfere with the ability to work." *Id.* Thus, "an ALJ may not rely conclusively on the grids unless he finds . . . that the claimant has no significant nonexertional impairment," and the finding must be supported by substantial evidence. *Id.*

In his decision, the ALJ did not make an express finding that plaintiff's pain was insignificant in terms of her ability to perform sedentary work. In addition, the ALJ failed to recognize that plaintiff's disability claim and her SSI claim must be analyzed separately to resolve this issue since they involve different time periods. Nonetheless, we see no reversible error here.

First, with regard to the claim for disability benefits, as noted above, there is a gap in plaintiff's medical records between June 1999 and June 2000, and it appears that plaintiff received no medical treatment for her pain condition during that time period. As a result, we conclude that there is insufficient evidence in

the record to support a finding by the ALJ that plaintiff suffered from a significant pain impairment as of June 30, 2000. The ALJ's use of the grids was therefore appropriate for purposes of plaintiff's claim for disability benefits.

Second, with regard to the claim for SSI benefits, the ALJ found that "from March 13, 2001, forward, . . . the claimant lacked a residual functional capacity to perform even sedentary work on a sustained basis." Aplt. App., Vol. II at 28. Based on this finding, the ALJ further found that: (1) plaintiff "has been 'disabled' from March 13, 2001, forward;" and (2) plaintiff "was and is eligible for SSI benefits as of March 13, 2001." *Id.* As set forth above, we have determined that the ALJ erred by failing to make identical findings as of February 20, 2001, the earliest possible available date for SSI benefits. The grids issue is thus moot for purposes of those benefits.

We AFFIRM the denial of plaintiff's claim for disability benefits. We also AFFIRM the award of SSI benefits, but we REMAND this matter to the district court with instructions to REMAND the case to the Commissioner for payment of one month of additional of SSI benefits.

Entered for the Court

Stephen H. Anderson
Circuit Judge

-12-