**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 12, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RUTH L. GRINER,

             Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

             Defendant-Appellee.

No. 07-5145
(D.C. No. 4:06-cv-00334-FHM)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **McKAY**, and **GORSUCH**, Circuit Judges.

       Ruth Griner appeals from the Commissioner's denial of disability insurance

benefits and supplemental security income.  We have jurisdiction under 42 U.S.C.

§ 405(g) and 28 U.S.C. § 1291, and we affirm.

---

[*]       After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

Ms. Griner applied for benefits on March 4, 2004, claiming disability from the amputation of her left leg below the knee, migraines, back pain, coronary artery disease, and hypertension. After a hearing, an Administrative Law Judge (ALJ) concluded at step five of the five-step sequential evaluation process, *see* 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (explaining the five-step process), that Ms. Griner was not disabled because she retained the residual functional capacity (RFC) to perform the complete range of sedentary work. The Appeals Council denied review, and a magistrate judge acting with the consent of the parties affirmed the ALJ's decision. Ms. Griner now appeals, claiming the ALJ: (1) incorrectly rejected her treating physician's opinion; (2) improperly discredited her testimony; and (3) failed to account for her nonexertional limitations in assessing her RFC.

# II

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Pisciotta v. Astrue*, 500 F.3d 1074, 1075 (10th Cir. 2007). We neither reweigh the evidence nor retry the case, but "examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

A.

Ms. Griner first contends the ALJ incorrectly evaluated her treating physician's opinion. She claims the ALJ implicitly rejected her doctor's opinion without considering the relevant factors of 20 C.F.R. §§ 404.1527 and 416.927.

A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "is consistent with other substantial evidence in the record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quotation omitted). If the opinion is not well-supported, or if it is inconsistent with substantial record evidence, an ALJ must weigh the opinion against the factors of 20 C.F.R. §§ 404.1527 and 416.927[1] and give good reasons for the weight he ultimately assigns. *See id.* at 1300-01. "[I]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.* at 1301 (quotation omitted).

---

[1]     These factors are:

> (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by the relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (quotation omitted).

Here, the ALJ rejected Dr. Chouteau's opinion and provided specific, legitimate reasons for doing so. On a single-page questionnaire, Dr. Chouteau indicated that Ms. Griner experienced two to four migraines per month, lasting twenty-four hours each; her migraines incapacitated her; medication helped control her symptoms; and she complied with treatment. Aplt. App., Vol. II at 287. The entire opinion consisted of four questions which Dr. Chouteau answered with abbreviated notations and a one-word response. The ALJ found "Dr. Chouteau's assessment [] deficient, without supportive medical documentation." *Id.* at 18. We have held that "a treating physician's report may be rejected if it is brief, conclusory and unsupported by medical evidence." *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988). This opinion was brief, conclusory, and unsupported by the evidence, and the ALJ was entitled to reject it.

The ALJ explained that there were a total of seven hospital visits over a five-month period where Ms. Griner sought treatment for her headaches, and he stated that the only other time she was treated in the hospital for headaches was in 2003. The ALJ recognized that on at least one occasion, Ms. Griner reported that her headache medications were ineffective, Aplt. App., Vol. II at 241, while on another she reported that she had not been taking her headache medication, *id.* at 270. Based on this inconsistent and conflicting evidence, the ALJ concluded that the opinion was "unsupported by and inconsistent with the credible evidence of

-4-

the record." *Id.* at 19. Given these specific, legitimate reasons, coupled with the curt nature of the doctor's opinion, the ALJ properly rejected it. "That the ALJ did not explicitly discuss all the factors of 20 C.F.R. § 404.1527(d) [and § 416.927(d)] . . . does not prevent this court from according his decision meaningful review." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). The ALJ's reference to the treating physician rule indicates that he considered the first and second factors, while his evaluation of the evidence demonstrates that he considered factors three and four.

Nevertheless, Ms. Griner insists that the ALJ's analysis was deficient because he failed to cite two additional hospital visits in 2004 and "the numerous times [she] was seen by Dr. Chouteau and/or his associate Nurse Schnell." Reply Br. at 5. But this evidence does not bolster Dr. Chouteau's report because two treatments over the course of a year do not demonstrate that Ms. Griner experienced two to four migraines per month. Nor do the copious record citations Ms. Griner provides in her reply brief demonstrate that she experienced two to four migraines per month. Rather, many of these citations reference the same hospital visits discussed by the ALJ or notes written by Dr. Chouteau discussing those hospital visits. Of the remaining citations, only three actually show that she complained of headaches, Aplt. App., Vol. II at 173, 187, 191, while the rest indicate that she reported some other symptom, *see, e.g., id.* at 174 ("hurt back"), 183 ("pulled muscle in [right] leg"), 192 ("cough/congestion"). The doctor's

opinion of the frequency and duration of Ms. Griner's headaches is simply not consistent with the evidence. In fact, Ms. Griner herself testified that she experienced migraines "at least once a week," *id.* at 315, and as many as three to four per week, not two to four a month; she also indicated that her headaches typically lasted eight hours, not twenty-four hours. And although she faults the ALJ for not recognizing that her failure to comply with treatment was due to a negative drug interaction, the fact remains that she was not complying with treatment. Under these circumstances, the ALJ was correct to reject the opinion.

B.

Ms. Griner next contends the ALJ improperly discredited her testimony concerning the severity of her impairments. She argues the ALJ evaluated only evidence supporting his conclusion that her impairments were not as severe as she alleged and failed to adequately explain why he found her incredible.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (quotation omitted). An ALJ's credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (alteration and quotation omitted). "So long as the ALJ sets forth the specific evidence he relies on in

-6-

evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Ms. Griner stated that she experienced migraines three to four times a week, had been unemployed since falling at work, and lived with her mother without any income. The ALJ noted this testimony, as well as her complaints that her fall damaged her prosthesis, which in turn irritated her skin and eventually restricted her to a wheelchair. He also acknowledged that Ms. Griner suffered "a strain/sprain of her back and left leg when she fell." Aplt. App., Vol. II at 19. Nevertheless, the ALJ discredited the alleged severity of these impairments because Ms. Griner obtained a new prosthesis and an MRI of her thoracic spine was normal. He also disbelieved her allegations of being unable to work because Dr. Robert Paul indicated that she was capable of returning to sedentary work. Given this evaluation, Ms. Griner's contention that the ALJ failed to consider the injury to her leg or the damage to her prosthesis is clearly without merit.

In an ancillary argument, Ms. Griner contends the ALJ failed to consider specific factors necessary to assess her subjective complaints of pain. *See Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987) (describing factors decision makers should consider when assessing the credibility of subjective complaints of pain). In particular, she claims the ALJ failed to consider her restricted daily activities, her discomfort from walking, her use of certain medications, her use of a wheelchair and other assistive devices, and her employment history.

The ALJ's decision, however, plainly indicates that these factors were considered. The ALJ stated that Ms. Griner exercised "by wal[k]ing from her house to the store when she [felt] up to it." Aplt. App., Vol. II at 18. He also noted that she was discharged from the hospital with "[s]ignificant bradycardia, secondary to beta blocker therapy," *id.* at 17, and that she tried a variety of medications including Demerol, Phenergan, and Maxalt. He cited her use of a wheelchair and her past work experience, and after considering these factors, concluded that her "allegations regarding her limitations [were] not totally credible." *Id.* at 22. Although the ALJ did not undertake a factor-by-factor analysis, "*Kepler* does not require a formalistic factor-by-factor recitation of the evidence," *Qualls*, 206 F.3d at 1372. Accordingly, the argument is unavailing.

C.

Finally, Ms. Griner contends that the ALJ's RFC assessment does not account for her nonexertional impairments. She claims that her headaches and hypertension are nonexertional impairments that preclude her from doing the complete range of sedentary work. This argument fails, however, because the ALJ included Ms. Griner's nonexertional impairments in hypothetical questions posed to a vocational expert (VE), and the VE testified that those impairments would not preclude her from working at the sedentary level. *See Thompson v. Sullivan*, 987 F.2d 1482, 1488, 1491 (10th Cir. 1993) (requiring VE testimony to

determine whether nonexertional impairments limited claimant's capacity to do sedentary work).

The ALJ first asked the VE whether a hypothetical claimant functioning at the sedentary level could perform Ms. Griner's past work given the following nonexertional impairments:

> [S]he is afflicted with sympomatology from a variety of sources to include mild to moderate pain and on occasion, she does have chronic pain that would be of sufficient severity as to be noticeable to her. But nonetheless, she could remain attentive and responsive in a work setting and carry out work assignments satisfactorily. She does take medication for relief of her symptomatology. But, with the medication usage, she is able to function and would be able to remain reasonably alert to perform required functions presented in a work setting.

Aplt. App., Vol. II at 329. The VE responded that these impairments would prevent a claimant from performing Ms. Griner's past work. The ALJ thus asked whether there were "any jobs that an individual with these limitations or restrictions could perform." *Id.* The VE answered, "[y]es," and offered two examples of jobs at the sedentary level, that of a semiconductor assembler and a clerical mailer. *Id.* at 329-30. At the ALJ's request, the VE offered a third example, that of an optical goods assembler. *Id.* at 330. When the VE asked if more examples were needed, the ALJ requested, "maybe one more or so." *Id.* Accordingly, the VE provided the job of a production assembler. *Id.* The ALJ then asked whether any vocationally relevant factors had been omitted from the hypothetical, to which the VE responded, "none." *Id.* Given this testimony, the

ALJ determined that Ms. Griner retained the RFC to perform the complete range of sedentary work. The ALJ's reliance on the VE's testimony demonstrates that Ms. Griner's nonexertional impairments were included in her RFC. Although Ms. Griner contends the VE recognized that her headaches would preclude her from working at the sedentary level, that observation assumed that her testimony was "credible and substantially verified by third party medical evidence." *Id.* at 331. Yet as we have already established, Ms. Griner's testimony was not entirely credible.

The judgment of the district court is AFFIRMED.

Entered for the Court

Monroe G. McKay
Circuit Judge